No. 47,326

CITY OF LAWRENCE, KANSAS, a municipal corporation, *Appellee*, v. JOHN W. McARDLE and all other signers of that certain petition submitted to the City Commission of the City of Lawrence, Kansas, on June 12, 1973, for acceptance and filing under provision of K. S. A. 12-3013, *Appellants*.

(522 P. 2d 420)

Opinion filed May 11, 1974.

*Dean Burkhead*, of Riling, Riling and Burkhead, of Lawrence, argued the cause, and *Eugene C. Riling*, of the same firm, was with him on the brief for the appellants.

*Milton P. Allen*, of Allen and Cooley, of Lawrence, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

FOTH, C.: The issue in this case is whether the equalization of firemen's salaries with those of policemen is a proper subject of an initiative petition. The trial court held it was not, and the proponents of an equalization ordinance have appealed.

The initiative statute, K. S. A. 12-3013, provides a procedure whereby a city's electors may initiate by petition any proposed ordinance "except an administrative ordinance" (and except certain other types of ordinance not relevant here). A petition meeting the statutory requirements as to form was submitted to the city commission of the city of Lawrence on June 12, 1973, by the appellant John W. McArdle. He was acting on behalf of himself, other members of a local firefighters' union, and other signers of the petition. The next step under the statute would have been for the city clerk to verify the signatures for genuineness and for the qualifications of the signers as electors, and to determine whether their number was equal to at least 25% of the electors who had voted in the last city election. If so, upon certification of those facts to the city commission it would have been the duty of that body to either pass the ordinance without alteration, or to call a special election to be held within ninety days and submit it to the electors.

The commission, however, believed that the proposed ordinance was "administrative" in nature and hence not a proper subject for the initiative process. Rather than embark on the verification process the city brought this action for a declaratory judgment, naming McArdle as defendant to represent those who had signed the petition.

McArdle answered, alleging that the proposed ordinance was a valid initiative ordinance and joining in the prayer for a declaratory judgment. The parties stipulated to the relevant facts, basically adding to those recited above only that "[p]olice personnel presently receive higher wages than fire personnel of corresponding rank."

The proposed ordinance is as follows:

"SECTION I.

There is hereby established a pay classification plan for employees of the Police Department and Fire Department of the City of Lawrence, Kansas, which shall be a separate classification from other employees of the City of Lawrence and shall be known as the Police and Fire Department Pay Schedule. Such pay classification shall be as follows, to-wit:

| | | |
|---|---|---|
| POLICE CHIEF | ) | CLASS A |
| FIRE CHIEF | ) | |
| ASSISTANT POLICE CHIEF (CAPTAIN) | ) | CLASS B |
| ASSISTANT FIRE CHIEF | ) | |
| POLICE LIEUTENANT | ) | CLASS C |
| FIRE CAPTAIN | ) | |
| POLICE DETECTIVE | ) | |
| DRILLMASTER (FD) | ) | CLASS D |
| POLICE SERGEANT | ) | |
| FIRE LIEUTENANT | ) | |
| POLICE CORPORAL | ) | CLASS E |
| PATROLMAN | ) | |
| FIREFIGHTER | ) | CLASS F |
| DPS OFFICER (16 Men) | ) | |

"SECTION II.

The City Commission shall establish the pay scale for each of the classifications above set forth.

"SECTION III.

All personnel of the Police Department or the Fire Department of the City of Lawrence shall receive a monthly wage within the scale applicable to such person's classification.

"SECTION IV.

The classification herein set forth shall be retroactive to January 16, 1973."

The case was submitted on the pleadings, stipulation and ordinance, and the trial court rendered the following memorandum decision:

"MEMORANDUM OF DECISION
(Filed September 10, 1973)

"This is an action for a declaratory judgment to determine if the proposed ordinance attached to Plaintiff's petition is legislative, and subject to initiative procedure as set out in K. S. A. 12-3013, or administrative and thus excepted from such procedure.

"The proposed ordinance establishes a pay classification plan for employees of the police and fire departments of the City of Lawrence, Kansas, 'which shall be a separate classification from other employees of the City of Lawrence and shall be known as the Police and Fire Department Pay Schedule.' The plan divides fire and police department employees into six classes for pay pur-

poses. The sixth classification (Class F) consists of patrolman, firefighter and DPS officer. The ordinance after the position of DPS officer contains in parentheses '(16 men)'. The meaning of the parenthetical expression '(16 men)' was not a part of the stipulated facts submitted by the parties, nor was evidence presented thereon. Counsel for defendant indicated during argument on the briefs, that said expression was thought to have reference to a limitation on the number of DPS officers to be employed by the City. Whether the limitation was a maximum or minimum one was not determined.

"Section II of the proposed ordinance provides that the city commission shall establish pay scales for each classification. Section III provides that fire and police department employees shall receive a monthly wage within the pay scale applicable to the employee's classification. Section IV makes the classification plan retroactive to January 16, 1973.

"An agreed statement of facts and an agreed statement of the legal issue involved was submitted by the parties. The sole question for determination is whether the proposed ordinance is administrative or legislative in nature.

"1. The City of Lawrence operates under the City Manager Plan of government. The City Manager is chosen solely on the basis of his administrative ability and is responsible for the appointment and removal of heads of departments and subordinate officers and employees. The city manager establishes the administrative divisions of the city, and the city commission reviews annually the administrative organization of the city and approves or disapproves the divisions and staff positions. K. S. A. 12-1014, 1015, 1024; *Code of the City of Lawrence*, 1973 1-201 to 1-302. The city manager is responsible for the administration of all city affairs, which would clearly include personnel matters. *Piper v. City of Wichita* 174 Kan. 590 at 597.

"2. The Kansas Supreme Court, although having never dealt with an ordinance like the one in question, has adopted the following tests to determine an ordinance legislative in nature: 1) does the proposed law make new policy or plan rather than to execute one already in existence, *Lewis v. City of South Hutchinson,* 162 Kan. 104; 174 P. 2d 51; 2) does the proposed ordinance state a declaration of public purpose and make provision for ways and means to accomplish it, *State, ex rel v. Charles,* 136 Kan. 875, 18 P. 2d 149. Taking into consideration the cited Kansas statutes and cases, the following general statement of law contained in 42 *Am Jur 2d,* Initiative and Referendum, 661, would be applicable in Kansas: 'Personnel administration is primarily an administrative matter, but when an ordinance affecting personnel amounts to a statement of policy, it is a legislative measure subject to initiative and referendum.'

"3. The proposed ordinance, by its terms, sets up a separate classification for fire and police department personnel from all other city personnel. It thus does not affect all personnel of the city.

"Since police personnel presently receive higher wages than fire personnel of corresponding rank, its retroactive provision would require an additional public expenditure. It does not consider money resources available, tax potential or limitations. It makes no provision for ways and means to obtain money to fund the additional expenditure.

"4. If the proposed ordinance is legislative then the electorate could, in

piece-meal fashion, initiate pay classifications for other segregated portions of the city personnel. Such action would be prescribing details for the execution of an overall plan or policy already in existence.

"5. Applying the 'new policy or plan test' to a similar ordinance, the Kentucky court in *City of Newport v. Gugel*, 342 SW 2d 521 (1960) stated:

" '. . . we think it is clear that the ordinance here in question did not prescribe a "new policy or plan". While an overall, comprehensive plan or policy for personnel administration of the city government, giving consideration to such factors as the money resources available, the tax potential and its limitations and the requirements of a unified budget, would be legislative in character, the same cannot be said of an ordinance that deals only with a segregated portion of the administrative personnel and with a part of the administrative problems, and merely prescribe details within the framework of a previously adopted general plan. Personnel administration is primarily an administrative matter, at least as far as concerns the details of management. To permit the electorate to initiate piece-meal measures affecting the fiscal affairs of the city without regard for the overall fiscal program, or measures not embodying a basic plan or policy for the entire area of government activity upon which the measure touches, could result in destruction of the efficient administration of the affairs of the city, and we do not believe the initiative statute so intends.'

"6. Although there is a division of authority on this question; e. g. the annotation in 122 ALR 769 and *Glass v. Smith* (Texas) 244 SW2d 645, it is the Court's opinion that the law as stated in the Kentucky decision is better reasoned and more applicable to the situation in Kansas, under the city manager plan, and is consistent with the Kansas case law cited.

"The Court, therefore, makes the following conclusions of law:

"1. Declaratory judgment is an appropriate remedy for determination of the issue involved herein. K. S. A. 60-1701.

"2. The proposed ordinance does not constitute an overall, comprehensive policy for personnel administration of the city government.

"Instead of making a new law or policy, the ordinance deals only with a segregated portion of the administrative personnel and with part of the administrative problems, and merely prescribes details within the framework of a previously adopted general plan, and is administrative in nature.

"3. Being administrative in nature, the proposed ordinance is not subject to initiative and referendum as provided by K. S. A. 12-3013."

It is from the judgment rendered on these findings that McArdle has appealed.

We agree with the trial court's conclusions, basically for the reasons set forth in its well-reasoned memorandum decision. However, because of the importance of the issue we believe some further amplification is appropriate.

As the trial court observed, this court has not previously dealt with a salary ordinance under our initiative and referendum law. We have, however, had occasion to consider the "legislative" versus

"administrative" dichotomy in a number of cases under the predecessors of the present statute.

One of the earliest, *State, ex rel., v. City of Kingman,* 123 Kan. 207, 254 Pac. 397, dealt with a statute which made any ordinance subject to protest and referendum except those containing a statement of "emergency." While the statute made no exception for administrative ordinances the court nevertheless had no doubt that "the ordinances to which the referendum statute is intended to apply are those which are legislative in their character" (p. 209). Although the case was not decided on that ground, the court took the occasion to say that the paving ordinance in question there was "more properly describable as administrative" (p. 210). It was in that case that the court first observed that "The tendency seems to be to confine the operation of similar referendum statutes *with a considerable degree of strictness to measures which are quite clearly and fully legislative* and not principally executive or administrative." (P. 209. Emphasis added.)

In *State, ex rel., v. Morton,* 128 Kan. 125, 276 Pac. 62, the location within the city of a connecting link of the state highway system was held to be an "administrative" decision, and therefore not subject to the initiative. On the other hand, whether or not a particular street should be widened, and land condemned for that purpose, was a legislative question and subject to referendum in *State, ex rel., v. Jacobs,* 135 Kan. 513, 11 P. 2d 739.

Whether a city should provide gas to its inhabitants through contracting with a private utility, or by building its own plant to be financed by a bond issue, was held to be a legislative question and subject to initiative and referendum in *State, ex rel., v. Charles,* 136 Kan. 875, 18 P. 2d 149. Relying on the three prior cases cited above, the court found that "It is well settled that under the statute only legislative questions can be referred to a vote of the people." (P. 877.) The court in that case quoted approvingly from 43 C. J. 585:

"Acts constituting a declaration of public purpose and making provisions for ways and means of its accomplishment may be generally classified as calling for the exercise of legislative power." (P. 877.)

Another utility question was presented in *Lewis v. City of South Hutchinson,* 162 Kan. 104, 174 P. 2d 51. There the electors had approved the building of a municipal water system at a bond election. An initiative ordinance was proposed which would limit

the city's authority to proceed until plans and specifications were made available for public inspection and the city was assured that materials would be available so that construction could start within sixty days and proceed without interruption. This, it was held, was an administrative ordinance, dealing only with ways and means of carrying out a policy already agreed upon, i. e., that the city should have its own water system. In so holding the court set forth the concept that "One crucial test for determining that an ordinance is administrative or legislative is whether the ordinance is one making a new law or one executing a law already in existence." (Syl. ¶ 10.) The court reiterated the "strict construction" philosophy espoused in *State, ex rel., v. City of Kingman,* supra, and went on to note that the provisions of the proposed ordinance were not "general and permanent in character but are to apply only in connection with the issuance of certain bonds and the construction of a particular public improvement." (P. 128.)

Finally, in *State, ex rel., v. Salome,* 167 Kan. 766, 208 P. 2d 198, the selection of a specific plan for implementing a flood control project previously declared necessary was held administrative, and not subject to initiative and referendum.

As may be seen, our previous cases do little to answer the present question beyond establishing the general principles noted by the trial court, which come down to the proposition that a legislative ordinance establishes new policy, while an administrative ordinance carries out existing policy. To this we might add the "legislative" characteristics of permanence and generality of application noted in *Lewis v. City of South Hutchinson,* supra, and the rule of strict construction or narrow application to measures "quite clearly and fully legislative," first oberved in *State, ex rel., v. City of Kingman,* supra, and adhered to in *Lewis.*

Cases from other jurisdictions offer no clear guidelines for classifying salary ordinances, as was noted by the court below. The Kentucky court, in the case relied on by the trial court, observed that "The courts of other jurisdictions are sharply divided on the question. See Annotation, 122 A. L. R. 769, and supplemental decisions. It appears that Illinois, Iowa, Georgia, Ohio and Utah have held that ordinances of this kind are administrative and thus not within the intiative power, while Texas, South Dakota, Washington, Missouri and Alabama take the opposite view. California courts have gone both ways." (*City of Newport v. Gugel,* [Ky., 1960] 342

S. W. 2d 517, 520.) It took the position that a "piece-meal" approach to the fiscal and personnel problems of a city was more administrative than legislative, and not subject to that state's initiative statute. It later used the same rationale to hold that a proposed ordinance repealing a city occupation tax was not subject to initiative in *Batten v. Hambley*, (Ky., 1966) 400 S. W. 2d 683. Such an attack on the city's revenue, made without consideration of the overall needs of the city, might lead to fiscal paralysis.

The Texas case, *Glass v. Smith*, 150 Tex. 632, 244 S. W. 2d 645, (1952), cited and rejected by the court below, is illustrative of those taking the other tack. The Texas court noted that that state's legislature had expressly provided that classification within police and fire departments be done by ordinance of the city council, rather than by administrative action of the city's civil service commission. Had the legislature chosen the latter course, the court said, such action might have served to withdraw the subject from the operative field of the initiative. Since it did not, the court found the whole area of classification and salaries to be within the traditional province of the legislative branch. The court's holding was consistent with its earlier position that initiative and referendum provisions in city charters represented powers "reserved to the people," and that "such charter provisions should be liberally construed in favor of the power reserved." (*Taxpayers' Assn. v. City of Houston*, 129 Tex. 627, 632, 105 S. W. 2d 655.) Our own philosophy, as noted above, has been to the contrary.

A discussion of the arguments on both sides of the issue appears in *Shriver v. Bench*, 6 Utah 2d 329, 313 P. 2d 475 (1957). Summarizing the arguments found in the cases supporting the view that the fixing of salaries is a legislative function, the court found them to be: that a liberal view of powers reserved to the people is consonant with the ideal of a democratic society; that the legislature always has an overriding *power* to fix salaries, even if it has delegated that authority to an administrative agency; that proper salaries are so intimately connected with efficient public service as to be a matter of basic public policy; and that the question must be legislative because so much time of a city council is devoted to it.

The primary argument on the other side was said to be that "legislative" actions are of a permanent character, while salaries are necessarily subject to frequent re-examination (even when tied to the consumer price index, as in that case). The court went on to say:

"Another consideration, the 'practicality test' supports the administrative view point. The fixing of salary schedules in a modern city with its numerous departments and various classes of employees is a duty which can best be performed by persons having specialized training and experience in municipal government generally and particular knowledge of the affairs, fiscal and otherwise, of the city. They must be conversant with many facts, such as: *prevailing wage scales for similar services both in public service and private industry; the supply and demand for labor of the classes involved; the demands of the various departments upon the public treasury and the balance to be maintained among them; the current inflationary or deflationary trend of money; the extent of the public debt; the money resources available; the tax potential and its limitations; and the overall budget within which the city is required by law to operate.*

"It can readily be seen from the foregoing that analyzing the factors which should be taken into consideration in fixing salaries, together with other considerations which must be weighted in individual cases, presents a problem of such complexity that it is not practical for the public to give it sufficient time and attention to make a proper determination of the matter, and further, that the changes which are continually occurring make it highly desirable that there be some expeditious method of re-examining the situation at frequent intervals. This points to the conclusion that it is much simpler, easier, and comports more with reason and the practical exigencies of the operation of city government that the salaries be adjusted by the administrative procedure set up in the charter. This is one of the bases of reasoning relied on by the courts in passing on whether a proposed action is legislative or administrative. *If the result would be to impair the efficient administration of the municipality, the courts tend toward the conclusion that initiative and referendum provisions are not applicable.*" (Id., p. 333. Emphasis added.)

The Utah court went on to observe that in the case before it the fixing of salaries was *in practice* an administrative matter, being handled under civil service by a personnel department operating under a city manager. He, as chief administrator, was responsible to the council, who in turn must account to the electors. Thus ultimate control was retained by the people, but was to be exercised through the ballot box rather than the initiative.

The matter obviously is not without difficulty, but on the whole we are more inclined toward the views of the Kentucky court (which persuaded the court below) and of the Utah court. Unlike the Texas court we have never adopted a "liberal" view of the matters which should be subject to initiative and referendum, but quite the contrary. *State, ex rel., v. City of Kingman,* supra; *Lewis v. City of South Hutchinson,* supra. Although not fully articulated in those cases, the "practicality test" referred to by the Utah court may be seen running through our cases. The administrative details of locating highways or carrying out complex flood control projects

are simply not proper subjects for the uninitiated electors to determine.

In the case at bar, personnel matters are handled in practice on an administrative basis by the city manager who is selected for his expertise in such matters. K. S. A. 12-1012. The proposed ordinance says in effect that firemen shall receive the same pay as policemen of equal rank and seniority. While at first blush this might appear to be a matter of "basic public policy," it is also apparent that to determine intelligently whether this policy should be adopted would require familiarity with all the considerations recited by the Utah court, quoted above. While the proposed ordinance does not actually fix salaries, it does impinge heavily on the efficient operation of the city's affairs and its fiscal integrity, even without regard to its retroactive feature.

To illustrate: we were told in oral argument that even under the present pay differential favoring policemen the city of Lawrence receives many more applications for its fire department than its police department. Whether this is so or not need not concern this court; it must, however, concern those responsible for fixing relative pay scales and determining whether or not they should be equal. Such non-pecuniary matters as hours, working conditions and physical risks obviously play a role in determining the desirability of any job. How much those factors should be weighed against monetary rewards is a question more properly determined by administrators with experience and knowledge in the field, than by a public with little knowledge and less interest.

Finally, we agree with the trial court, and the Kentucky decision on which it relied, that a piece-meal approach to the city's affairs cannot be tolerated. "Equal pay" has a fine ring to it, and an emotional appeal which may easily be caught up and applied by other groups. We do not mean to suggest that there may not be merit to any such application, but only that we are in the same shoes as the electorate in that we are too uninformed to make a rational decision on the issue. No group of employees can be considered in isolation, without regard to the city's overall financial picture. A proposition as to any is subject to acceptance or rejection by the electorate on an emotional basis which may well fail to account for either the merits of the individual proposition or the long-run public good.

For the foregoing reasons we concur in the trial court's conclusions and its judgment is affirmed.

APPROVED BY THE COURT.

FATZER, C. J., dissents, being of the opinion the ordinance in question is legislative in nature and subject to the initiative statute. (K. S. A. 12-3013.)