No. 99,808
No. 99,809

JAMES MCALISTER, *et al.*, *Appellants*, v. CITY OF FAIRWAY,
KANSAS, *et al.*, *Appellees.*
(212 P.3d 184)

Opinion filed July 24, 2009.

*Reid F. Holbrook*, of Holbrook & Osborn, P.A., of Overland Park, argued the cause, and *Michael T. Jilka* and *Judd L. Herbster*, of the same firm, were with him on the briefs for appellants.

*Michael J. Davis*, of Stinson Morrison Hecker, LLP, of Kansas City, Missouri, argued the cause, and *Stephen P. Chinn*, of the same firm, was with him on the brief, and *Michael K. Seck*, of Fisher Patterson Sayler & Smith, LLP of Overland Park, argued the cause and was with them on the brief for appellees.

*John R. Hamilton*, of Hamilton, Laughlin, Barker, Johnson & Watson, of Topeka, and *Dana Berliner* and *William H. Mellor*, of Institute for Justice, of Arlington, Virginia, were on the brief for *amici curiae* Institute for Justice and the Castle Coalition.

*Sandra Jacquot*, general counsel, and *Donald L. Moler, Jr.*, executive director, of League of Kansas Municipalities, of Topeka, were on the brief for *amicus curiae* League of Kansas Municipalities.

The opinion of the court was delivered by

BILES, J.: This is an appeal from a district court's decision on cross-motions for summary judgment involving two proposed city ordinances advanced by citizens of the City of Fairway, Kansas (City), through the initiative and referendum authority granted in K.S.A. 12-3013. The district court ruled the ordinances were not permitted by the statute. It is undisputed the required petitions accompanying these proposed ordinances are in proper form and carry sufficient genuine signatures from qualified local electors. The controversy arises from the ordinances' subject matter because state law excludes certain topics from the initiative and referendum process. See K.S.A. 12-3013(e).

The first proposed ordinance seeks to restrict the City's ability to relocate its city hall facilities to certain locations within the City's boundaries. The second proposes to not allow the use of rezoning, eminent domain, and condemnation, as well as restricting commercial, business, apartment, condominium, or mixed use development to certain locations within the City. The City refused to adopt the ordinances or advance them for public vote on the basis of K.S.A. 12-3013(e)(1), which states: "The provisions of this section shall not apply to: (1) Administrative ordinances." This litigation followed. The district court agreed with the City and determined both proposed ordinances were administrative. Our task is to decide whether either ordinance is administrative in nature.

We affirm. In reaching this decision, we review and revise the guidelines to be applied when courts are asked to determine whether an ordinance proposed under the initiative and referendum statute is administrative.

## Factual and Procedural Background

The material facts are not in dispute. Beginning in 2001, the governing body for the City began discussing the need for a new city hall building. Those discussions spanned the next few years. During that time, the City organized task forces to assess municipal needs, commissioned studies to review city services and associated issues, and conducted related public forums. The City also hired an architectural firm to complete a site analysis, validate a space

and needs study, prepare a conceptual design with cost information, and develop schematic designs. To finance the project, the City sought advice regarding municipal bonds.

During this conceptualization process, consideration was given to locating the new city hall facility on the southeast corner of Shawnee Mission Parkway and Mission Road. This led to some citizen opposition. At another point, the City entered into discussions with the State Historical Society and the Shawnee Indian Museum about locating the new facility on the Shawnee Indian Museum grounds. This, too, generated opposition.

James McAlister, Klaus Ulrich, and James Kernell (Appellants) are residents of the City. They prepared two proposed city ordinances and organized supporting petition drives in an effort to invoke the statutory initiative and referendum process set out in K.S.A. 12-3013. One petition was entitled "Restrictions on the Future Relocation of the City of Fairway City Hall" (the City Hall Petition.) The other was entitled "Restrictions on the Future Commercial Development of Residential Property in the City of Fairway, Kansas" (the Commercial Development Petition, also referred to by the trial court as the Eminent Domain Petition). To appreciate the controversy here, it is necessary to set out the language in the proposed ordinances.

The City Hall Petition, in pertinent part, states:

"Be it ordained by the governing body of the City of Fairway, Kansas: That the City of Fairway, Kansas, shall not relocate the City of Fairway City Hall to the following locations, and such locations shall not be considered by the City of Fairway, Kansas as proposed and/or potential relocation sites for such purpose:

"The 12 acre site commonly known as The Shawnee Indian Mission Historic Site, as designated on the Johnson County AIMS map of the City of Fairway, Kansas, as of January 14, 2005; and

"Within a one-quarter (1/4) mile radius of the southeast corner of the intersection of Mission Road and Shawnee Mission Parkway, as designated on the Johnson County AIMS map of the City of Fairway, Kansas, as of January 14, 2005; and

"Property in residential use, as designated on the Johnson County AIMS map of the City of Fairway, Kansas, as of January 14, 2005."

The Commercial Development Petition, in pertinent part, states:

"That the City of Fairway, Kansas shall not allow rezoning, nor eminent domain use, nor condemnation of Fairway's residential, neighborhood business or state historic properties, and specifically the following locations shall not be considered by the City of Fairway, Kansas as proposed and/or potential commercial, business, apartment, condominium or mixed use sites:

"The 12 acre site commonly known as The Shawnee Indian Mission Historic Site, as designated on the Johnson County AIMS map of the City of Fairway, Kansas, as of January 14, 2005; and

"Property on Mission Road, Shawnee Mission Parkway, or within a one-quarter (¼) mile radius of the intersection of Mission Road and Shawnee Mission Parkway, as designated on the Johnson County AIMS map of the City of Fairway, Kansas, as of January 14, 2005; and

"Property zoned residential anywhere in Fairway, as designated on the Johnson County AIMS map of the City of Fairway, Kansas, as of January 14, 2005."

Because it will impact our analysis, we need to note at this juncture that the record reflects 90.1 percent of the land in the City is zoned for residential use, while 5.6 percent is zoned commercial and 4.3 percent is zoned for public purposes. Therefore, the scope of the land area within the City protected by these proposals is considerable, as are the limitations imposed on the City.

As required by statute, both petitions were submitted for approval as to form to the county counselor. In December 2005, the county counselor gave that approval but reserved judgment as to whether either petition contained valid subject matter. On April 4, 2006, the Johnson County Election Office verified there were sufficient qualified voter signatures to satisfy the statutory requirements. We note the City is organized as a city of the second class, which means each petition had to carry signatures equal in number to 40 percent of the electors who voted at the last preceding regular city election. See K.S.A. 12-3013(a).

But the Fairway city attorney advised the mayor and city council the petitions were administrative in nature and, therefore, not subject to initiative and referendum under K.S.A. 12-3013(e)(1).

Based on this advice, the City took no further action on either petition. The City's refusal prompted this litigation.

Appellants filed two lawsuits — one for each initiative petition. In one lawsuit, appellants sought a declaratory judgment that the City Hall Petition was legislative in nature and, therefore, authorized by statute as an appropriate subject for the initiative and referendum process. They also sought an injunction, mandamus, and monetary damages for the City's alleged violation of 42 U.S.C. § 1983 (2006). In the other lawsuit, Appellants requested a declaratory judgment that the Commercial Development Petition was legislative in nature and other equitable relief in the nature of injunction and mandamus. In both cases, the defendants were the City and City Clerk Kathi Robards.

The district court consolidated the two cases. Thereafter, the parties filed cross-motions for summary judgment advancing differing conclusions about whether the petitions' subject matters were administrative or legislative. The City also sought to have the Commercial Development Petition declared void as being unconstitutionally vague and ambiguous.

On November 19, 2007, the district court granted the City's motions for summary judgment as to both proposed ordinances, finding each was administrative and not subject to initiative and referendum based on K.S.A. 12-3013(e)(1). In so deciding, the district court determined both petitions had the same purpose, which, it said, was to restrict the City's decision-making authority regarding the city hall building relocation.

To reach its conclusions regarding the proposed ordinances' administrative character, the district court applied this court's prior case law as stated in *Rauh v. City of Hutchinson*, 223 Kan. 514, 575 P.2d 517 (1978), and *City of Wichita v. Kansas Taxpayers Network, Inc.*, 255 Kan. 534, 874 P.2d 667 (1994) (citing *City of Lawrence v. McArdle*, 214 Kan. 862, 522 P.2d 420 [1974]). But as the district court viewed it, *Rauh* offered a separate test from the guidelines set out in *Kansas Taxpayers Network* and *McArdle*, so it applied both independently — reaching the same conclusion under either analysis.

In first applying *Rauh*, the district court determined both proposed ordinances were invalid because their subject matter, which the court characterized as public building acquisition and construction, was an issue of statewide concern. The district court held the legislature delegated decision-making power regarding public building acquisition and construction to city governments through K.S.A. 12-1737 and provided the manner by which a city may finance public buildings and the procedures for a city to utilize such financing. The district court further noted that although various statutes set out general standards by which cities can identify and acquire sites, construct facilities, and finance them, these statutes still leave specific decision-making power regarding location, construction, and financing to local city governing bodies. "Thus," the district court concluded, "ordinances implementing state policy regarding public buildings are administrative in nature."

Next, in applying the guidelines (factors) set out in *Kansas Taxpayers Network* and *McArdle*, the district court stated:

"These factors further indicate that the City Hall and Eminent Domain Petitions are administrative in character. The Petitions do not create new law, but administratively execute the existing state laws in K.S.A. 12-1736, giving cities the power to construct and acquire public buildings. The Petitions neither declare a public purpose nor provide ways and means to accomplish that purpose, but seek to deal with only specific possible locations of Fairway City Hall.

"Additionally, in evaluating sites for the location of the new city hall, the City utilized the specialized knowledge of architects, engineers, financial consultants, police officers, and city officials regarding the operational needs and demands of the City. The City further retained consultants to review the City's operations, associated space, safety and regulatory issues. Finally, while some of these factors may arguably contribute to either a legislative or administrative finding, the Court finds that the City Hall and Eminent Domain Petitions are not *clearly and fully* legislative. Thus, the subject of the proposed ordinances is administrative in character and is expressly excepted from the initiative and referendum process set out in K.S.A. 12-3013."

Based on its ruling, the district court dismissed as moot the City's motion to declare the Commercial Development Petition unconstitutionally vague and ambiguous. Appellants filed timely notices of appeal, and those appeals were subsequently consolidated. We transferred the controversy to this court under K.S.A. 20-3018(c).

One additional complication occurred while this appeal was pending. The City agreed to lease space for its administrative offices in city hall. This lease has a 7-year term, commencing September 1, 2008, with a renewal option for an additional 5-year extension. The City also agreed to renovate its existing city hall building to serve as the City's public safety center, and it leased additional space until the public safety center renovations were complete. In August 2008, all City personnel moved to the temporary space.

The new city hall and public safety center are not located within any areas restricted by the City Hall Petition. But the lease permits the City to transfer, sublet, or assign the lease to third parties after obtaining the landlord's written consent. At oral arguments, counsel for the City also confirmed the lease was subject to the cash-basis law under K.S.A. 10-1101 *et seq.* and could be cancelled annually under those provisions.

Based on these undisputed facts, we are asked to determine the following issues: (1) Whether this appeal is now moot due to the City's recent actions regarding the city hall building location; (2) whether the district court erred in determining the City Hall Petition was administrative; and (3) whether the district court erred in determining the Commercial Development Petition was administrative. But in deciding the latter two issues, we take the opportunity provided by this litigation to review and revise the guidelines previously articulated in *Rauh, Kansas Taxpayers Network, McArdle,* and *City of Wichita v. Fitzgerald,* 22 Kan. App. 2d 428, 916 P.2d 1301 (1996), by further addressing the legislative versus administrative dichotomy.

## Standard of Review

The standard for reviewing a district court's decision granting summary judgment is well known:

"Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for

summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied." *Miller v. Westport Ins. Corp.*, 288 Kan. 27, Syl. ¶ 1, 200 P.3d 419 (2009).

To the extent there is no factual dispute, appellate review of an order granting summary judgment is unlimited. *Polson v. Farmers Ins. Co.*, 288 Kan. 165, Syl. ¶ 1, 200 P.3d 1266 (2009).

The determination as to whether an ordinance proposed under the initiative and referendum statute is administrative is to be based on the factual situation in each case. *Kansas Taxpayers Network*, 255 Kan. at 539; *Rauh*, 223 Kan. 514, Syl. ¶ 3. Here, we are asked to review the district court's ruling on summary judgment that these initiative and referendum petitions are administrative in character. The parties agree the facts are not in dispute. Therefore, our appellate review is unlimited. *Polson*, 288 Kan. 165, Syl. ¶ 1.

In *Fitzgerald*, which also dealt with whether a proposed initiative and referendum ordinance was administrative, our Court of Appeals indicated the scope of review was unlimited because such determinations require a court to interpret K.S.A. 12-3013. 22 Kan. App. 2d at 430 ("This issue requires the court to interpret the statute governing initiative and referendum."). Although we agree the scope of review is unlimited, we do not believe the reason is because these cases require us to interpret a statute. As noted above, this court consistently has held that a determination as to whether a proposed ordinance is legislative or administrative is based on the factual situations in each case. Thus, we are not interpreting the statutory language excluding administrative ordinances under K.S.A. 12-3013(e)(1), as suggested by the Court of Appeals, when we analyze an initiative petition against the guidelines. Instead, we are applying our case law to the facts, which in this case are undisputed. Our appellate review is unlimited because the facts in this case are not in dispute. See *Polson*, 200 Kan. 165, Syl. ¶ 1.

### Is this appeal moot?

The City urges us to dismiss this appeal as moot because it entered into a lease agreement locating its city hall facilities outside

the areas proposed to be restricted by the City Hall and Commercial Development Petitions. The City argues any judgment rendered now would have no practical effect. We disagree.

An appeal will not be dismissed for mootness, unless it is clearly and convincingly shown the actual controversy has ended, the only judgment that could be entered would be ineffectual for any purpose, and it would not impact any of the parties' rights. *State ex rel. Slusher v. City of Leavenworth*, 285 Kan. 438, 454, 172 P.3d 1154 (2007).

The issues in this appeal are not moot. The city hall lease agreement may temporarily satisfy the City Hall Petition's requirements, but the City Hall Petition seeks to prohibit the City's ability to relocate city hall in the protected areas. The lease terms do not offer this permanence. Instead, they allow the City to terminate the agreement under certain conditions or transfer or assign the lease to a third party. Such action could permit the City to move its city hall facility into the City Hall Petition's restricted areas at any time.

In addition, and as conceded by counsel during oral argument, the lease terms are subject to the state's cash-basis law, meaning the city council may take action to end the lease agreement's term before its stated expiration date. Finally, the Commercial Development Petition involves restrictions and prohibitions on rezoning, eminent domain, and condemnation that are unaffected by the leasing arrangement. We find the City has not clearly and convincingly shown the issues in this dispute are moot.

*What guidelines are appropriate to determine if a proposed ordinance is legislative or administrative in character?*

The Kansas Initiative and Referendum statute, K.S.A. 12-3013, allows city electors to submit a proposed ordinance to a city's governing body by petition if it is signed by a minimum percentage of qualified electors. The percentage varies depending on the city's class size. For example, Fairway is a city of the second class, so a petition there must carry signatures at least equal in number to 40 percent of the electors who voted at the last preceding regular city election. K.S.A. 12-3013(a). Once a petition is submitted with the

required minimum signatures and assuming the subject matter is authorized, the city must either pass the ordinance without alteration within 20 days or call a special election allowing the city's electors to vote on it. K.S.A. 12-3013(a).

But a city is not required to act on a petition if its subject matter applies to: (1) An administrative ordinance; (2) an ordinance related to a public improvement to be paid wholly or in part by the levy of a special assessment; or (3) an ordinance subject to referendum or election under another statute. K.S.A. 12-3013(e). Here, the City refused the City Hall and Commercial Development Petitions after concluding both were administrative, which would satisfy the first exclusion if that determination is correct.

Whether a proposed ordinance is legislative or administrative is often a difficult question to answer. *Lewis v. City of South Hutchinson*, 162 Kan. 104, 124, 174 P.2d 51 (1946). Across the country, courts frequently struggle to classify ordinances as either legislative or administrative. A principal reason for the inconsistency is that some courts give a more liberal application to their particular initiative and referendum process than others. As this court previously commented:

"An examination of the cases and legal authorities will disclose that the determination of whether a municipality has acted in its legislative or administrative capacity is indeed difficult and by no means consistent. Each case must be determined on its particular facts and even then there is no unanimity of opinion. Action based on one set of facts will be considered legislative in one jurisdiction while the same or similar action may be considered administrative in a different jurisdiction." *Rauh*, 223 Kan. at 522.

In Kansas, the initiative and referendum process under K.S.A. 12-3013 has long been judged on a more demanding basis than in some other locales. See *McArdle*, 214 Kan. at 870 ("[W]e have never adopted a 'liberal' view of the matters which should be subject to initiative and referendum, but quite the contrary."); *State, ex rel., v. City of Kingman*, 123 Kan. 207, 209, 254 P. 397 (1927) ("The tendency seems to be to confine the operation of similar referendum statutes with a considerable degree of strictness to measures which are quite clearly and fully legislative and not principally executive or administrative.").

One challenge arising from our stricter doctrine occurs when applying the guidelines for judging whether a particular initiative and referendum petition is legislative or administrative in nature. As we have said previously, no single act of a governing body is ever likely to be solely legislative or solely administrative. *Kansas Taxpayers Network*, 255 Kan. at 540. Accordingly, courts must determine when a proposed ordinance's administrative characteristics predominate enough to exclude it from the initiative and referendum process.

This court repeatedly has stated the initiative and referendum statute is only appropriate for measures that are " 'quite clearly and fully legislative and not principally executive or administrative.' " 255 Kan. at 540; *McArdle*, 214 Kan. at 867. Making this determination calls for a weighing of the characteristics recited in our case law to decide when an initiative is "legislative" or "administrative." But if the doctrine is applied too strictly by our courts, it can render the statutory initiative and referendum process meaningless and deny our citizens an electoral option reserved to them by the legislature. Courts should be on guard against this danger. A statute should not be interpreted in such a manner as to make it meaningless. See *In re Adoption of G.L.V.*, 286 Kan. 1034, 1041, 190 P.3d 245 (2008) (courts presume the legislature did not intend to enact meaningless legislation).

This difficulty is exemplified by the way in which the district court condensed our strictness doctrine and declared it would strike the proposed ordinances if they were not "clearly and fully legislative." In so stating, the district court dropped the qualifying phrase from our cases that adds "and not principally executive or administrative" to the analysis. We believe this additional qualifying phrase is critical.

In other words, the phrase "quite clearly and fully legislative" should not be read so strictly as to mean "solely legislative." Instead, courts must determine the essential character of a proposed ordinance from the facts found in each case and then confine the operation of the initiative and referendum statute with a considerable degree of strictness to those measures that are "quite clearly and fully legislative and not principally executive or administra-

tive." *City of Kingman*, 123 Kan. at 209; see *City of Lawrence v. McArdle*, 214 Kan. 862, 867, 522 P.2d 420 (1974). To be sure, our case law in this area fails to give courts a more precise demarcation in the legislative versus administrative tug-of-war. But this does not mean the initiative and referendum statute may be limited to only those circumstances in which cities are acting purely in a legislative capacity, as argued by the League of Kansas Municipalities in its *amicus curiae* brief and suggested by the district court's ruling.

With this admonition, we move to the guidelines. In *McArdle* this court reviewed the prior case law and then identified specific rationales to determine under the facts of each case whether the essential character of a proposed ordinance is legislative or administrative. Those *McArdle* guidelines are:

1. An ordinance that makes new law is legislative; while an ordinance that executes an existing law is administrative. Permanency and generality are key features of a legislative ordinance. 214 Kan. 862, Syl. ¶ 2.
2. Acts that declare public purpose and provide ways and means to accomplish that purpose generally may be classified as legislative. Acts that deal with a small segment of an overall policy question generally are administrative. 214 Kan. 862, Syl. ¶ 3.
3. Decisions which require specialized training and experience in municipal government and intimate knowledge of the fiscal and other affairs of a city in order to make a rational choice may properly be characterized as administrative, even though they may also be said to involve the establishment of policy. 214 Kan. 862, Syl. ¶ 4.

In *City of Wichita v. Kansas Taxpayers Network, Inc.*, 255 Kan. 534, 874 P.2d 667 (1994), the court enumerated as a fourth guideline the strict application philosophy. This provided that the initiative and referendum statute should be restricted to measures " 'quite clearly and fully legislative and not principally executive or administrative.' " 255 Kan. at 540 (quoting *McArdle*, 214 Kan. 862, Syl. ¶ 1). This fourth guideline was also referenced in *Fitzgerald*, 22 Kan. App. 2d at 431.

But we believe this principle is more useful as a recitation of the strict construction doctrine discussed above and less helpful as a guideline for determining under the facts in each case whether a proposed ordinance is legislative or administrative. In its brief, the City recognized this same concern and commented that this was "less a fourth measuring stick than a statement of State judicial policy." We agree. It should not continue to be enumerated as a fourth guideline for analyzing the facts in these types of cases.

In *Rauh v. City of Hutchinson*, 223 Kan. 514, 519-20, 575 P.2d 517 (1978), this court added to the legislative versus administrative analysis, stating:

" '[I]f the subject is one of statewide concern in which the legislature has delegated decision-making power, not to the local electors, but to the local council or board as the state's designated agent for local implementation of state policy, the action receives an "administrative" characterization, [and] hence is outside the scope of the initiative and referendum.' [Citation omitted.]"

See 5 McQuillin, Municipal Corporations § 16.54, pp. 404-05 (3d ed. rev. 2004).

The City argues this language from *Rauh* constitutes a separate test from the *McArdle* guidelines, and it urges even further that the first step in this court's analysis should be to determine whether the proposed ordinances are administrative under *Rauh*. The City contends that if we find the proposed ordinances are matters of "statewide concern" as articulated in *Rauh*, then we are not required to consider the *McArdle* guidelines. We disagree.

The City's argument ignores this court's actual holding in *Rauh*, which explains that the decision was based on the "broad general policy and the comprehensive nature of the industrial revenue bond act *and* applying the criteria set forth in *City of Lawrence v. McArdle*." (Emphasis added.) *Rauh*, 223 Kan. at 522. We believe the City is wrong in offering that *Rauh* is a separate test for deciding whether a proposed ordinance is administrative under the initiative and referendum statute. Instead, we see *Rauh* as providing another guideline to be used in conjunction with the three other *McArdle* guidelines. Therefore, in analyzing the facts regarding the two proposed ordinances disputed here, we will employ the three *McArdle* guidelines and add the language from *Rauh* as a fourth

guideline, replacing the fourth guideline previously identified in *Kansas Taxpayers Network* and *Fitzgerald.*

Finally, we believe it is important to point out that we will not view any one guideline as necessarily controlling over the others. We will give consideration to each guideline before reaching a final decision. But in doing so, we acknowledge it is possible the weight given to any one guideline may be enough under a particular factual situation to decide that a proposed ordinance intrudes too far into a city's administrative arena. That is a matter best determined in each case. See generally *State v. Ortega-Cadelan,* 287 Kan. 157, 161, 194 P.3d 1195 (2008) (holding "one consideration may weigh so heavily that it directs the final conclusion" when applying the three-prong test for determining whether a sentence violates the constitutional prohibition against cruel or unusual punishment); *State v. Tosh,* 278 Kan. 83, 97, 91 P.3d 1204 (2004) (holding the third factor in the three-factor test for prosecutorial misconduct may override the first two factors if certain conditions are satisfied). In the end, if the weight of all the guidelines taken together indicates a proposed ordinance is clearly and fully legislative and not principally executive or administrative, it is appropriate subject matter under the initiative and referendum statute.

Next, we consider each proposed ordinance separately using the legal standards and four guidelines articulated above.

### The City Hall Petition

*(1) The City Hall Petition would create a new law or policy. Under the first guideline, this proposed ordinance is legislative in character.*

Appellants argue the City Hall Petition is legislative because it would make new law, would be permanent, and is general in nature. The City argues it is administrative because it seeks to have the City's electors execute the City's existing authority to acquire public buildings under K.S.A. 12-1736. The City further maintains the proposed ordinance limits the authority granted to it under that statute, but it does not create new law. The district court agreed with the City. We disagree and find the proposed ordinance is legislative in character under this guideline.

Whether a proposed ordinance is legislative because it creates a new policy or administrative because it executes a current policy was discussed in *McArdle*. In that case, the electors submitted a proposed ordinance seeking the "equalization of firemen's salaries with those of policemen" within the same pay classification. 214 Kan. at 863. The *McArdle* court said a comprehensive plan or policy regarding the personnel administration of city government, which also considered the city's financial resources, tax potential, and a unified budget, would be legislative. In contrast, the court said an ordinance to equalize only firemen's pay, which dealt with a segregated portion of the city's personnel, was administrative in nature. See 214 Kan. at 866, 871-72.

The facts in this case show the City did not have a policy in place regarding the location for its new city hall facilities. In 2002, 2005, and 2006, the City organized task forces to assess possible locations, held public forums to obtain the electors' input, adopted a recommendation to consider the site located at the southeast corner of Shawnee Mission Parkway and Mission Road, and then abandoned that plan due to public opposition to that location. The proposed ordinance advocated by Appellants outlines what would serve as a new policy prohibiting the City from relocating its city hall facilities in designated areas. This is much broader, and far more comprehensive, than the salary provisions considered in *McArdle*.

In addition, the City adopted Resolutions Nos. 2006-C and 2006-D, formally stating it would not consider the southeast corner of Shawnee Mission Parkway and Mission Road or the Shawnee Mission State Historical Site as locations for the new city hall. The character of these two city-adopted resolutions is similar in nature to those proposed by Appellants. This gives credence to the Appellant's argument that the City Hall Petition is legislative.

Finally, the City Hall Petition would be permanent and is general. There is no other reasonable interpretation other than it is intended to be permanent. In fact, it would undermine the petition's purpose if it were not permanent. An ordinance showing an intent to form a standing rule of government, until it is repealed, is one of permanent operation. *Rauh*, 223 Kan. at 520.

Under this first guideline, we believe the more appropriate characterization is to find the City Hall Petition would create a new law or policy. It was submitted at a time when the City was actively seeking input on locations for its city hall facilities. Ultimately, the City adopted resolutions regarding the same subject matter. In addition, even though the City had a comprehensive plan for city development in effect at the time, and it could be argued the city hall location was a segment of that plan, the City was not relying on the plan in this instance. Under the circumstances, the City Hall Petition should be considered legislative under this guideline.

*(2) The City Hall Petition declares a public purpose and provides the means to accomplish that purpose. Under the second guideline, this petition is legislative in character.*

Appellants argue the City Hall Petition is legislative because it declares a public purpose in protecting residential and historic properties from encroachment by a new city hall by prohibiting development in the protected areas. The City contends the petition fails to expressly declare a public purpose, and it further argues the narrow scope of the ordinance does not embody the broad public purpose required to categorize it as a legislative ordinance. The district court agreed with the City, holding the City Hall Petition failed to expressly declare a public purpose and to provide any means to accomplish such a purpose because it pertained only to the specified locations for city hall.

But a plain reading of the proposed ordinance shows its purpose is to prohibit the City from relocating the city hall to residential and historical areas. While the proposed ordinance may not expressly declare this purpose, it is so obvious that it would be repetitive to do so. In addition, it accomplishes its purpose by restricting the City's authority. Therefore, the City Hall Petition is legislative in character under this guideline.

*(3) The City Hall Petition intrudes into areas of government requiring specialized training and expertise. Under the third guideline, this petition is administrative in character.*

Appellants argue the proposed ordinance does not intrude into areas requiring specialized training and experience because it only

places limitations on where city hall facilities may be located but does not actually select the site. This, they claim, allows the City to use its expertise when examining eligible locations outside the prohibited areas to select the final site, which preserves the ordinance's legislative character.

The City argues the opposite. It claims the decision to locate city hall requires particularized knowledge as to the City's operations, associated space requirements, public safety, regulatory issues, as well as an intimate appreciation of the City's fiscal affairs. The City also says its electors are not equipped to determine the city hall's location because they lack this particularized understanding. We agree that the City Hall Petition is administrative under this guideline because of the sweeping geographic scope of the proposal's prohibitions.

It is true, as Appellants argue, that a decision to eliminate certain locations within a city as sites for the new city hall is far different from selecting the actual site where the facility would be built. But in this case, the proposed ordinance effectively eliminates more than 90 percent of the area within the City's boundaries as acceptable sites. Of the remaining 10 percent, the record reflects the City would have few practical options from which to choose. Such an extensive restriction has the practical effect of directing the City's choice and belies the Appellants' argument that their proposed ordinance is simply eliminating a few possible sites from the City's consideration.

The undisputed facts underscore what is required to select a location. The City sought extensive advice about various technical aspects applicable to its decisions regarding municipal facilities. As noted by the district court:

"[I]n evaluating sites for the location of its new city hall, the City utilized the specialized knowledge of architects, engineers, financial consultants, police officers, and city officials regarding the operational needs and demands of the City. The City further retained consultants to review the City's operations, associated space, safety and regulatory issues."

We believe decisions about where municipal facilities should be located necessarily require specialized knowledge and expertise. This is especially true where, as here, decisions are further com-

plicated from an operational standpoint by the possibility of hous-ing public safety components within the facilities. The decision where to locate the new city hall facilities is analogous to *Kansas Taxpayers Network*, in which the initiative referendum that sought to block the establishment of a storm water utility system was deemed administrative. In that instance, this court observed:

"[T]he operation, management, and financing of a city-wide storm water man-agement system reasonably fits within the context of decisions that require spe-cialized knowledge and experience with respect to city management. The physical structure of the system, maintenance, and fee assessment and collection all fit within the purview of the City's expertise." 255 Kan. at 541.

Based on the facts in this case, we find the wide scale extent of the requested restriction in this proposed ordinance converts it from one that simply eliminates a few locations from the City's consideration to one that effectively makes the location decision for the City. To impose such a restrictive choice upon the City makes the character of this proposed ordinance administrative un-der our third guideline.

*(4) The City Hall Petition does not address matters of statewide concern. Under the fourth guideline, this petition is legislative in character.*

Appellants argue the City Hall Petition is legislative in nature because it addresses simply a local issue, not a statewide concern. Not surprisingly, the City contends it is administrative because of K.S.A. 12-1736 *et seq.*, which the City claims is a comprehensive regulatory system in which the legislature delegated the power to acquire public buildings to city governments. Therefore, the City's argument continues, a proposed ordinance that attempts to imple-ment or restrict this statutory scheme is administrative in nature. The district court adopted the City's position. We disagree with the district court and the City.

The public building statutes relied on by the City are merely enabling statutes. They do not contain any policy statements, and they do not involve complex intergovernmental projects or com-prehensive statutory enactments. We have found initiative ordi-nances affecting such statutory authority and undertakings to be

administrative in nature. See *Rauh*, 223 Kan. at 522 (initiative ordinance seeking to block city's issuance of industrial revenue bonds is administrative); *State, ex rel., v. Salome*, 167 Kan. 766, 781, 208 P.2d 198 (1949) (initiative ordinance seeking to repeal prior city authorization to cooperate with an area-wide federal flood control project is administrative); *State, ex rel., v. Morton*, 128 Kan. 125, 126, 276 P. 62 (1929) (initiative ordinance seeking to stop city from fixing a particular route to connect with larger state and federal highway project is administrative). But here we find the location of city hall facilities in the City is not a matter of statewide concern.

K.S.A. 12-1736 states:

"Any city in this state may erect or construct, acquire by gift, purchase, condemnation or lease a public building or buildings and procure any necessary site therefore by gift, purchase or condemnation and may alter, repair, reconstruct, remodel, replace or make additions to, furnish and equip a public building or buildings. The authority herein may also be exercised jointly or in cooperation with any other governmental unit so empowered, upon such terms and conditions as shall be agreed upon by the governing body of the city and the governing body of such cooperating governmental unit."

Further, K.S.A. 12-1737 provides eight methods to finance the acquisition of public buildings. Taken together, these statutes enable a city to acquire, build, and finance public buildings; but they do not do so as part of a broader statutory scheme serving the State of Kansas' overall interests.

By way of example, a comparison of K.S.A. 12-1736 to the statutory scheme for issuance of industrial revenue bonds discussed in *Rauh*, 223 Kan. 514, illustrates the power to acquire public buildings is not a comprehensive statutory scheme and does not establish a statewide interest in where the City locates its public buildings. The *Rauh* court held the industrial (now economic development) revenue bonds statutes set forth in K.S.A. 12-1740 to K.S.A. 12-1749 were comprehensive legislation declaring a statewide purpose and delegating the execution of the policies and authority set in the law to the cities in their administrative capacity and based its interpretation on the statutes' language, particularly K.S.A. 12-1740. See 223 Kan. at 517-18, 520-22. That statute provides in pertinent part:

"It is the purpose of this act to promote, stimulate and develop the general welfare and economic prosperity of the state of Kansas through the promotion and advancement of physical and mental health, industrial, commercial, agricultural, natural resources and of recreational development in the state; to encourage and assist in the location of new business and industry in this state and the expansion, relocation or retention of existing business, industry and health development . . . thus promoting the general welfare of the citizens of this state . . . ." K.S.A. 12-1740.

The court in *Rauh* held the Industrial Revenue Bond Act was comprehensive and complete because it specified the powers, restrictions, and procedures cities must utilize. 223 Kan. at 520. In contrast, K.S.A. 12-1736 does not establish a statewide policy interest regarding public building decisions, and it is not a comprehensive statutory scheme like the Industrial Revenue Bond Act. K.S.A. 12-1736 is merely an enabling statute with little or no impact beyond the local level. Therefore, the City Hall Petition should be characterized as legislative under this guideline.

*Disposition: the City Hall Petition is administrative because of the weight given to the third guideline under these facts.*

In weighing the four guidelines to the City Hall Petition, we find it is principally executive or administrative in nature. We do so even though we find it legislative in character under three of our four guidelines. This is because its prohibition against locating the city hall facilities is so extensive that it makes unavailable more than 90 percent of the City's geographic territory. This has the practical effect of dictating where the City locates its city hall facilities. Such a restriction necessarily limits and intrudes to a substantial extent into areas of city administration requiring specialized knowledge about city affairs, regulatory requirements, long-range planning, and financing. These are all subject matters typically left to city administrators. We find this intrusion into the efficient administration of the City's operations is so overreaching that it outweighs the three guidelines that arguably appear to have more legislative character to them. The district court was correct in describing the City Hall Petition as administrative.

### The Commercial Development Petition

Before considering the Commercial Development Petition under the guidelines, it is necessary first to discuss the proposed or-

dinance's purpose because it is debated by the parties. Appellants argue its purpose is limited to precluding the City from allowing commercial development of the City's residential and historic properties by prohibiting eminent domain and rezoning for future commercial development. But on its face, the proposed ordinance is more expansive.

The proposed ordinance's title is "Restrictions on the Future Commercial Development of Residential Property in the City of Fairway, Kansas." The first sentence states:

"Be it ordained . . . : That the City of Fairway, Kansas shall not allow rezoning, nor eminent domain use, nor condemnation of Fairway's residential, neighborhood business or state historic properties, and specifically the following locations shall not be considered by the City of Fairway, Kansas as proposed and/or potential commercial, business, apartment, condominium or mixed use sites."

The first half of this language attempts to place a total restriction on rezoning, eminent domain use, or condemnation of properties currently zoned as residential, neighborhood, or historic. The League of Kansas Municipalities, in its *amicus curiae* brief, correctly argues this language not only restricts the City's ability to use its statutory authority to rezone or condemn property, but taken literally it imposes on the City an obligation to "not allow" any other entity, such as a public utility, to exercise its own independent statutory authority to initiate eminent domain proceedings. Thus, the plain language of the proposed ordinance attempts to inject the City into areas in which our legislature has given it no role, such as public utility condemnations.

We believe we must analyze the Commercial Development Petition by referring to its plain language, rather than a "common-sense reading" as urged by its proponents. It is not unreasonable, nor does it represent a "hyper-technical" interpretation, as Appellants claim, to simply accept this proposed ordinance by the plain and simple language it employs, rather than allowing Appellants to recast it for purposes of this litigation. Although we acknowledge Appellants' attempt to argue a less expansive interpretation, the plain language of the proposed ordinance imposes much broader obligations on the City than Appellants concede. Faced with this plain language, we are compelled to test its provisions against that

language. With this understanding, we apply the four guidelines to the Commercial Development Petition.

*(1) The Commercial Development Petition would execute the City's existing plans and ordinances. Under the first guideline, this petition is administrative in character.*

Appellants maintain the Commercial Development Petition is legislative because it imposes the first restriction on the City's ability to condemn or rezone property in the protected areas. The City argues the proposed ordinance is administrative because it attempts to restrict the City's existing authority to rezone property or exercise its eminent domain authority.

The Commercial Development Petition is not new law. It pertains to a segment of the City's existing development plans and ordinances and would prevent the City's execution of its existing law. Under this first guideline, it should be characterized as administrative.

The City authorized its planning commission to make a comprehensive plan for the City's development and redevelopment. Code of the City of Fairway, Kansas, Ordinance 15-2-201 (Fairway City Code 1976). The commission is required to reconsider this plan annually. Ordinance 15-2-205 (Fairway City Code 1976). The plan's purpose is to "constitute the basis or guide to insure a coordinated and harmonious development or redevelopment of the City which will best promote the health, safety, morals, order, convenience, prosperity and general welfare of the City as well as wise and efficient expenditure of public funds." Ordinance 15-2-201. The planning commission adopted a comprehensive plan, which details the City's needs and goals for city planning including infrastructure, storm water management, public safety, taxes, residential property, commercial property, and recreational areas. If adopted, the Commercial Development Petition would impact a portion of that existing policy.

In this regard, the Commercial Development Petition is analogous to the proposed ordinance in *City of Lawrence v. McArdle*, 214 Kan. 862, 522 P.2d 420 (1974), where the electors submitted a petition to equalize police and firemen's pay. As discussed above,

we held in *McArdle* that the proposed ordinance was administrative because it dealt with a small segment of the City's personnel issues. 214 Kan. at 866, 871-72. We stated that "[n]o group of employees can be considered in isolation, without regard to the city's overall financial picture." 214 Kan. at 871. Likewise, zoning issues cannot be considered in isolation but must be considered within an overall plan.

Finally, we agree the Commercial Development Petition would be permanent, which is another factor under this guideline. But a proposed ordinance is not legislative just because it is permanent in nature. Instead, the more appropriate characterization under this guideline is to deem the proposed ordinance administrative because it seeks to impact a select portion of the City's overall comprehensive planning.

*(2) The Commercial Development Petition declares a public purpose but pertains to a small segment of an overall policy question. Under the second guideline, this petition cannot be characterized as either principally legislative or administrative.*

Much like the City Hall Petition, Appellants argue the Commercial Development Petition declares a public purpose to protect residential properties, neighborhood businesses, and historic properties from commercial development. In addition, they note it clearly provides an enforcement mechanism because it eliminates the City's ability to rezone or use its eminent domain authority. On the other hand, the City contends these powers operate within the City's comprehensive planning and development ordinances.

As to this second guideline, both parties are correct. A plain reading of the Commercial Development Petition shows it is both sweeping in its scope, yet impacts a smaller segment of the City's overall planning. Consistent with the principle recognized earlier that an ordinance is rarely solely legislative or administrative, the two considerations in this guideline are not always mutually exclusive. We believe this guideline ultimately does not aid our analysis as to whether the Commercial Development Petition is principally legislative or administrative.

*(3) The Commercial Development Petition intrudes into areas of government requiring specialized training and expertise. Under the third guideline, this petition is administrative in character.*

Appellants argue specialized training and expertise is not required to identify a policy restricting commercial development in residential and historic areas. The City argues the ability to properly rezone or condemn property requires specialized training and experience in municipal government operations, as well as knowledge about the City's fiscal affairs, its comprehensive plan, capital improvement plan, and annual budget.

As discussed above, the Commercial Development Petition places a permanent restriction on the City's ability to rezone property in historic or residential areas for commercial development. This comprises more than 90 percent of the City's geographic area. It also restricts the City's ability to acquire private property through eminent domain in those areas. The practical effect of this would be to permanently lock the City into its current zoning plan throughout nearly the entire City. The relative merits of imposing such a sweeping restriction onto the City requires special knowledge and training to fully comprehend its impact. The Commercial Development Petition should be considered administrative under this guideline.

*(4) The Commercial Development Petition addresses matters of statewide concern. Under the fourth guideline, this petition is administrative in character.*

Appellants urge that the Commercial Development Petition is a matter of only local concern because the restrictions have no impact on state policy. They also argue the statutes giving cities eminent domain powers are merely enabling statutes and do not establish legislative policy nor prescribe comprehensive legislation. The City argues the petition restricts the City's delegated authority in a comprehensive regulatory scheme. The City contends there is a complex interplay of numerous statutes that grant, restrict, and regulate its authority to condemn, zone, or rezone property. As to this guideline, we will look first to restrictions imposed on the City

and then to the City's obligation to "not allow" eminent domain or condemnation by any other entity.

Eminent domain is an inherent power vested exclusively in the State, and that power is limited only by constitutional restrictions. *Concerned Citizens, United, Inc. v. Kansas Power & Light Co.*, 215 Kan. 218, 226, 523 P.2d 755 (1974). The State has authority to delegate eminent domain authority through legislative action. 215 Kan. at 226.

In K.S.A. 2008 Supp. 26-201, eminent domain authority is broadly granted to cities "[w]henever it shall be deemed necessary by the governing body of any city." This language shows the legislature's intent to delegate this power to the City's governing body and not to its electors. In addition, the statute limits the manner in which a city may exercise this eminent domain power by requiring that cities conform to the Eminent Domain Procedure Act, K.S.A. 26-501 *et. seq.*

The Eminent Domain Procedure Act is a comprehensive statutory scheme outlining the procedures and circumstances in which a city may use its eminent domain authority. See K.S.A. 26-503; K.S.A. 2008 Supp. 26-504; and K.S.A. 2008 Supp. 26-507. These statutes are analogous to the Industrial Revenue Bond Act discussed in *Rauh*. In that case, this court noted the legislature had enacted broad general provisions and policies and then delegated to the city the administrative function of "filling in the details" under the reasonable and definite standards contained in the act itself. *Rauh*, 223 Kan. at 521. Similarly, the legislature has delegated the administrative functions of "filling in the details" to cities under the Eminent Domain Procedure Act. We find this Act to be more than simply an enabling statute such as the law authorizing cities to acquire buildings, as discussed above.

As to the Commercial Development Petition's restrictions on the City's zoning authority, those are similar to the ones discussed in *City of Wichita v. Fitzgerald*, 22 Kan. App. 2d 428, 916 P.2d 1301 (1996), which the Court of Appeals determined gave the proposed ordinance in that case its administrative character. 22 Kan. App. 2d at 429, 433. The *Fitzgerald* court held:

"[W]here a comprehensive zoning ordinance has been passed and the power to change certain zoning or grant exemptions has been committed to the mayor or city council, the zoning of particular property is an administrative matter. [Citation omitted.] Conversely, the passing of the general comprehensive zoning plan is typically legislative. [Citations omitted.]" 22 Kan. App. 2d at 434.

We agree. As mentioned by the City, the proposed ordinance would functionally repeal several provisions in the City's existing procedures under the City's comprehensive zoning plan. The proposed ordinance also would encumber or abolish rights of individual citizens in the existing City code by preventing those individuals from requesting rezoning of their private, residential property. We find the proposed ordinance's restrictions on the City's zoning authority would intrude into a matter of statewide concern given the comprehensive nature of the zoning statutes and the legislature's delegation of that authority to the cities. Under *Rauh*, this weighs in favor of determining the proposed ordinance to be administrative in nature.

But beyond this, when we review the proposed ordinance's literal obligations requiring that the City not allow rezoning, eminent domain use, or condemnation in the restricted locations by anyone, it underscores how this measure intrudes into a matter of statewide concern. In the eminent domain area, the legislature has seen fit to grant many different entities authority to condemn property for specific purposes. See K.S.A. 55-1205 (authorizing natural gas public utilities to exercise power of eminent domain); K.S.A. 66-911 (authorizing railway companies to exercise power of eminent domain); K.S.A. 68-1903 (authorizing highway authorities to acquire private or public property through condemnation); K.S.A. 2008 Supp. 72-8212a (authorizing unified school districts to exercise eminent domain power); and K.S.A. 2008 Supp. 74-99d08 (authorizing the Kansas Electric Transmission Authority to exercise eminent domain powers on behalf of corporations constructing, upgrading, or repairing electric transmission facilities).

To the extent the proposed ordinance may be read to require the City to take action to not allow those other entities to invoke the statutory authority granted them by the legislature, the ordinance may only be seen as an attempt to interfere with legislative

delegations of authority. These are matters of statewide concern. This, too, makes the proposed ordinance administrative in character.

*Disposition: the Commercial Development Petition is administrative under three of the four guidelines.*

In applying the four guidelines to the Commercial Development Petition, we find it is principally executive or administrative in nature. We do so because: (1) Its broad restrictions pervasively intrude into various matters of statewide concern by attempting to impact rezoning and eminent domain authority by the City and other entities that have been delegated that authority by the legislature; and (2) the sweeping scope of the restrictions covering more than 90 percent of the City's geographic area has the effect of permanently locking the City into its current zoning plan, which is a decision requiring specialized knowledge and training to fully comprehend its impact.

To recap, we find the subject matters of both the City Hall Petition and the Commercial Development Petition to be excluded under K.S.A. 12-3013(e)(1). The City's refusal to adopt the ordinances or advance them for public vote was appropriate.

We affirm the district court for the reasons stated.

LUCKERT, J., not participating.

MALONE, J., assigned.