NOT DESIGNATED FOR PUBLICATION

No. 120,539

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

KELLY CHRISTINE MULLOY,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; THOMAS M. SUTHERLAND, judge. Opinion filed March 13, 2020. Affirmed in part and dismissed in part.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before STANDRIDGE, P.J., LEBEN and BRUNS, JJ.

PER CURIAM: Kelly Christine Mulloy appeals following her conviction of a single count of aggravated child endangerment. Mulloy argues that the evidence was insufficient to support her conviction and the district court committed various trial errors. For the reasons stated below, we affirm in part and dismiss in part.

1

FACTS

Shortly after 7 p.m. on August 30, 2015, Kansas Highway Patrol Trooper Jason Ruffin was dispatched to a single vehicle crash on Interstate 435 in Lenexa. The area, near the I-35 interchange, was under heavy construction that required shifting of some traffic lanes. The eastbound lanes curved to the right, and the lanes that were normally driven were cornered off by a median barrier wall. Crash barrels were placed in front of the wall to mitigate any damage if a driver missed the curve.

When he arrived at the scene, Trooper Ruffin observed crash barrels strewn about the highway and a dark-colored car turned sideways in the inside lane, facing the barrier wall. The car's air bags had deployed, and Ruffin could tell that the car had rolled over based on significant damage to its roof. Ruffin made contact with Mulloy, the driver of the car, who was holding her infant son. Mulloy reported that the crash occurred because someone had run her off the road. Mulloy refused to let paramedics examine her son, who had distinct red marks on each side of his neck that were consistent with marks from car seat straps. Ruffin noticed that Mulloy appeared to be weirdly calm despite the traumatic event that had just happened. He also noticed that her eyes appeared glazed, watery, and bloodshot. During the course of his conversation with her, Ruffin began to believe that Mulloy might be under the influence of something. When asked, however, Mulloy denied that she was on any medication or that she had been drinking any alcohol prior to the accident. Ruffin did not initially smell any alcohol but later advised Mulloy that he could smell alcohol on her breath. Mulloy admitted to having one beer at a friend's house and said, "I had a beer, don't punish me for that."

As a result of his observations and Mulloy's admission, Trooper Ruffin requested Mulloy perform field sobriety tests. Mulloy refused to complete the walk-and-turn test, complaining that her skirt was too long and that she would lose her balance if she lifted her skirt up. During the one-leg-stand test, Mulloy put her foot down three times in 30

2

seconds and did not follow Ruffin's instructions, which were to keep going until he told her to stop. Based on the totality of the circumstances, Ruffin did not believe that Mulloy was capable of safely operating a car. Ruffin placed Mulloy under arrest and put her in the passenger seat of his patrol car. According to Ruffin, Mulloy was uncooperative and began screaming. And now that she was in an enclosed area instead of an open area outside, Ruffin said he could really notice the smell of alcohol permeating the interior of his car.

The State charged Mulloy with one count each of aggravated endangering a child and driving under the influence (DUI) of alcohol.

The case proceeded to a jury trial, where the State presented testimony from two eyewitnesses to Mulloy's accident. Grace Petrie testified that she was driving on I-435 on the evening of August 30, 2015. As Petrie drove through a clearly marked construction zone, she was passed by a car that was moving quickly between the narrowing lanes. A radar device indicated that the car was driving at least 65 or 70 miles per hour through a 55 mile-per-hour construction zone. Petrie saw the car swerve to the left and hit something before it went airborne and rolled, landing on its passenger side before flipping back over and landing upright. Petrie pulled over and called 911. Petrie saw someone pull a small child out of the back seat and noted that the driver of the car, later identified as Mulloy, was very emotional. Petrie observed that Mulloy's words were slurred and noticed the smell of alcohol coming from her. Petrie testified that at the time of the crash, there were no obstructions in the roadway and no other cars near Mulloy's car.

Stephen Prince testified that he was driving through the I-435 construction zone when he saw a car cut across two lanes of traffic, hit a concrete barrier, and flip over before landing back on its wheels. When Prince stopped to check on the driver, Mulloy got out of the car and appeared dazed and disoriented. Another individual had stopped to

help pull Mulloy's son out of the car. Prince attempted to calm Mulloy down and informed her that the police and paramedics were on their way. Mulloy stated several times that she needed to leave but then realized that her car was not operational. Prince later heard Mulloy tell an officer that another car had cut her off and forced her to swerve. Prince testified that he did not see anyone run Mulloy off the road and that he did not see Mulloy engage her brakes before the crash. Prince did not smell alcohol on Mulloy, but he did not think that Mulloy's behavior was normal and found it odd that Mulloy did not seem to want any help.

Mulloy called two witnesses to testify on her behalf. Dr. Kevin Mays, Mulloy's treating psychiatrist since 2007, testified that Mulloy suffered from bipolar disorder, generalized anxiety disorder, PTSD, panic disorder, ADHD, and borderline personality disorder. Dr. Mays testified that he prescribed Mulloy medication to deal with her mental health issues. Dr. Mays noted that Mulloy had "a number of stressors" in August 2015, including ongoing issues with her child's father.

Victoria Danilov testified that she had known Mulloy since elementary school and that she was aware Mulloy suffered from mental health issues. Danilov said Mulloy was at her house just before the accident. Danilov said that Mulloy did not appear to be under the influence of any drugs or alcohol and that she did not consume alcohol with Mulloy. Danilov said Mulloy seemed really worried about a child custody case that was scheduled for later that week.

The jury found Mulloy guilty of aggravated endangering a child but not guilty of DUI. At sentencing, the district court found that substantial and compelling reasons supported an upward dispositional departure from the presumptive sentence of probation for the aggravated endangering a child conviction. The court ultimately sentenced Mulloy to 7 months in prison with a postrelease supervision term of 12 months.

4

Mulloy raises the following five issues on appeal: (1) The evidence was insufficient to support her conviction of aggravated child endangerment, (2) the district court erred by accepting the jury's verdict without making the appropriate inquiry required by K.S.A. 22-3421, (3) the district court violated her right to be present at all critical stages of the trial, (4) the cumulative effect of the alleged errors deprived her of her constitutional right to a fair trial, and (5) the district court erred in imposing an upward dispositional departure sentence. We address each of these issues in turn.

1. *Sufficiency of the evidence*

Mulloy argues the evidence presented by the State at trial was insufficient to support her conviction of aggravated child endangerment. When the sufficiency of evidence is challenged in a criminal case, we review the claim by looking at all the evidence in a light most favorable to the prosecution and determining whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. An appellate court generally will not reweigh the evidence, resolve evidentiary conflicts, or make witness credibility determinations. *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018).

To obtain a conviction for aggravated endangerment of a child, the State was required to prove, in relevant part, that Mulloy "[r]ecklessly caus[ed] or permitt[ed] a child under the age of 18 years to be placed in a situation in which the child's life, body or health is endangered." See K.S.A. 2019 Supp. 21-5601(b)(1). The term "recklessly" was defined for the jury as follows:

> "A defendant acts recklessly when the defendant consciously disregards a
> substantial and unjustifiable risk that certain circumstances exist, or a result of the
> defendant's actions will follow.

"This act by the defendant disregarding the risk must be a gross deviation from the standard of care a reasonable person would use in the same situation."

Mulloy makes two challenges to the sufficiency of the State's evidence. First, Mulloy argues the State failed to prove that she acted recklessly. Second, she contends the offense of aggravated child endangerment is an alternative means crime for which the State failed to present sufficient evidence to support each alternative means.

a. *Recklessness*

In support of her claim that the State failed to prove that she acted recklessly, Mulloy suggests that it was unremarkable for an accident to occur in a construction zone. Mulloy points to placement of the crash barrels in the area as evidence that the authorities actually expect accidents like hers to occur. Mulloy also notes that the accident resulted in no injuries; in fact, she says she did not endanger her son but instead protected him by securing him in a car seat. Mulloy further notes that there were witnesses who testified at trial that she was not driving unsafely. Finally, Mulloy argues the jury's guilty verdict for aggravated endangering a child in count 1 was based on an instruction that went beyond the scope of the facts alleged in count 1 of the complaint and was inconsistent with the jury's not guilty verdict in count 2.

We address Mulloy's last arguments first. Mulloy directs our attention to an excerpt from the language in count 1 of the complaint, which alleged that Mulloy committed the crime of aggravated child endangerment by "crashing a vehicle while driving under the influence of alcohol." Because the jury found her not guilty of DUI in count 2, Mulloy argues that the State necessarily failed to prove the elements of count 1 beyond a reasonable doubt: that she crashed a vehicle while driving under the influence of alcohol.

Count 1 of the complaint alleged as follows:

"That on or about the 30th day of August, 2015, County of Johnson and State of Kansas, KELLY CHRISTINE MULLOY, did then and there unlawfully, feloniously, and recklessly cause or permit a child under the age of eighteen (18) years, to-wit: J.J. (XX/XX/14), to be placed in a situation in which the child's life, body or health is injured or endangered, to-wit: crashing a vehicle while driving under the influence of alcohol, a severity level 9 person felony, in violation of K.S.A. 21-5601, K.S.A. 21-6804 and K.S.A. 21-6807. (aggravated endangering a child)."

The substance of count 1 of the complaint alleged Mulloy committed the crime of aggravated endangering a child by recklessly causing or permitting a child to be placed in a situation in which the child's life, body, or health is injured or endangered. Although count 1 of the complaint also alleged Mulloy crashed her vehicle while driving under the influence of alcohol, those particular facts were not necessary to prove the essential elements of aggravated endangering a child as charged in the complaint: that Mulloy recklessly caused or permitted a child under the age of 18 years to be placed in a situation in which the child's life, body, or health is injured or endangered. A complaint will be deemed sufficient if it contains a plain and concise written statement of the essential facts constituting the crime charged drawn in the language of the statute. K.S.A. 22-3201(b). And a court may strike surplusage from the complaint, information, or indictment. K.S.A. 22-3201(d). Although we acknowledge the "to wit: crashing a vehicle while driving under the influence of alcohol" language was included in count 1 of the complaint here, the State was not required to prove to the jury that Mulloy was driving under the influence of alcohol as an element of aggravated child endangerment. See K.S.A 2019 Supp. 21-5601(b)(1). This is consistent with the instruction provided by the court to the jury with regard to this charge:

"The State must prove that the Defendant committed the crime of aggravated endangering a child recklessly. A defendant acts recklessly when the defendant

7

consciously disregards a substantial and unjustifiable risk that certain circumstances exist or a result of the Defendant's actions will follow. This act by the Defendant disregarding the risk must be a gross deviation from the standard of care a reasonable person would use in the same situation."

And the jury's verdicts in counts 1 and 2 were not inconsistent; in fact, the jury's not guilty verdict in count 2 had no bearing on the jury's verdict in count 1. The jury was instructed that each crime charged against Mulloy was a separate and distinct offense and that it must decide each charge separately on the evidence and law applicable to it, uninfluenced by its decision as to any other charge. The jury also was instructed that it could convict or acquit Mulloy on any or all of the charged offenses.

We now move to Mulloy's remaining arguments regarding insufficient evidence of recklessness. The State presented the following evidence that Mulloy consciously disregarded a substantial and unjustifiable risk when she drove through a construction zone in an unsafe manner with her son in the car. The jury heard testimony that at the time of the crash, Mulloy was traveling between 65 and 75 miles per hour in a 55 mile-per-hour zone. Although Petrie testified that she initially did not think that Mulloy was driving unsafely by speeding and passing other vehicles on the highway, she testified that she later noticed that Mulloy began making sharper transitions between lanes and that she felt that Mulloy made poor, unsafe choices that resulted in the crash. Just before the crash, Mulloy cut across two lanes of traffic, struck a crash barrel, and flipped her car over. No other cars were nearby; there was no evidence that Mulloy was run off the road by another car or that Mulloy ever engaged her brakes before the crash. Due to the nature of the scene and the condition of Mulloy's car, Trooper Ruffin was surprised that the accident did not result in extensive injuries. Ruffin testified that the accident could have been fatal if the crash barrels had not been in place.

8

And even though the jury ultimately acquitted Mulloy of driving under the influence of alcohol to a degree "that rendered her incapable of safely driving a vehicle," the State did present evidence that she was, in fact, driving under the influence of alcohol. Mulloy admitted to drinking a beer and more than one witness testified to smelling alcohol on Mulloy's person. Mulloy either refused to begin or did not complete the requested field sobriety tests. According to witness testimony, Mulloy slurred her words, her eyes were bloodshot, and she was combative and argumentative with law enforcement. Although the jury may not have believed this evidence was sufficient to find beyond a reasonable doubt that Mulloy was driving under the influence of alcohol to a degree that rendered her incapable of safely driving a vehicle as alleged in count 2 of the complaint, this evidence nevertheless provides additional proof of the recklessness element required for the crime of aggravated child endangerment.

Viewed in the light most favorable to the State, there was sufficient evidence of recklessness to support Mulloy's conviction for aggravated child endangerment.

b. *Alternative means*

Next, Mulloy argues that aggravated child endangerment is an alternative means crime for which the State failed to present sufficient evidence to support each alternative means. The State counters that this crime does not present an alternative means issue and that sufficient evidence supports Mulloy's conviction.

The jury in a criminal case is required to arrive at a unanimous verdict.

>"'In an alternative means case, where a single offense may be committed in more than one way, there must be jury unanimity as to *guilt* for the single crime charged. Unanimity is not required, however, as to the *means* by which the crime was committed so long as substantial evidence supports each alternative means.'" *State v. Timley*, 255 Kan. 286, 289, 875 P.2d 242 (1994).

9

When the jury is instructed on alternative means of committing a single crime and the State fails to present sufficient evidence to support each means, reversal is required. *State v. Wright*, 290 Kan. 194, 202-03, 224 P.3d 1159 (2010). Conversely, if the jury was not instructed on alternative means but merely received instructions on "options within a means," then the lack of evidence on one of the options will not require reversal. See *State v. Brown*, 295 Kan. 181, 196-98, 284 P.3d 977 (2012); *Wright*, 290 Kan. at 203.

Before addressing Mulloy's claim that the State failed to provide sufficient evidence to prove each the alternative means of committing the crime of aggravated child endangerment, we first must determine whether K.S.A. 2019 Supp. 21-5601(b)(1) truly presents alternative means by which the crime of aggravated child endangerment can be committed. If the crime of aggravated endangering a child cannot be committed in more than one way, jury unanimity is not at issue and an alternative means analysis is inapplicable. Issues of statutory interpretation, including issues of whether a statute creates alternative means of committing a crime, raise questions of law over which appellate courts have unlimited review. *State v. Britt*, 295 Kan. 1018, 1022, 287 P.3d 905 (2012).

As set forth above, K.S.A. 2019 Supp. 21-5601(b)(1) defines aggravated endangering a child as "[r]ecklessly causing or permitting a child under the age of 18 years to be placed in a situation in which the child's life, body or health may be injured or endangered." Mulloy argues the Legislature intended the "causing or permitting" language to be alternative means of violating the statute. She relies on *State v. Wilson*, 267 Kan. 550, 987 P.2d 1060 (1999), and *State v. Dean*, 42 Kan. App. 2d 32, 208 P.3d 343 (2009), in support of her claim.

But more recently, in *Brown*, our Supreme Court clarified the test for identifying whether a statute contains alternative means. The court first noted that "'[t]he mere use of a disjunctive in a statute does not an alternative means crime make.'" *Brown*, 295 Kan. at

Instead, courts must look primarily to legislative intent to determine whether statutory alternatives are alternative means. The court summarized the proper analysis as follows:

> "[I]n determining if the legislature intended to state alternative means of committing a crime, a court must analyze whether the legislature listed two or more alternative distinct, material elements of a crime—that is, separate or distinct *mens rea*, *actus reas*, and, in some statutes, causation elements. Or, did the legislature list options within a means, that is, options that merely describe a material element or describe a factual circumstance that would prove the element? The listing of alternative distinct, material elements, when incorporated into an elements instruction, creates an alternative means issue demanding super-sufficiency of the evidence. Often this intent can be discerned from the structure of the statute. On the other hand, the legislature generally does not intend to create alternative means when it merely describes a material element or a factual circumstance that would prove the crime. Such descriptions are secondary matters—options within a means—that do not, even if included in a jury instruction, raise a sufficiency issue that requires a court to examine whether the option is supported by evidence." *Brown*, 295 Kan. at 199-200.

Under the test set forth in *Brown*, the statutory language "causing or permitting" does not present two alternative means of committing the crime of aggravated endangerment of a child. Rather, the phrase "causing or permitting" merely describes a factual circumstance that may prove a distinct, material element of aggravated child endangerment—namely, placing a child in a situation in which the child's life, body, or health was endangered. In other words, the actus reas of K.S.A. 2019 Supp. 21-5601(b)(1) is to place a child in a dangerous situation and the phrase "causing or permitting" merely describes this material element. See *Brown*, 295 Kan. at 196-97. Thus, the phrase "causing or permitting" does not describe alternative means; rather, it describes options within a means. The inclusion of this language in the jury instructions did not make this an alternative means case triggering concerns of jury unanimity.

But even if K.S.A. 2019 Supp. 21-5601(b)(1) did, in fact, establish alternative means for committing the crime of aggravated endangering a child, there was sufficient evidence presented at trial to support Mulloy's conviction on grounds that she both caused and permitted her son to be placed in a dangerous situation. Mulloy appears to concede there was sufficient evidence that she *caused* her son to be placed in a dangerous situation. But Mulloy suggests the State failed to prove that she *permitted* him to be placed in a dangerous situation because she did not allow a third party to place him in a dangerous situation. Contrary to Mulloy's argument, the presence of a third party is not required by K.S.A. 2019 Supp. 21-5601(b)(1). And this argument ignores the obvious fact that Mulloy permitted her son to be placed in a dangerous situation by driving in a reckless manner while he was in the car. Because Mulloy was the individual who created the dangerous situation to which her son was exposed, she permitted him to be placed in that dangerous situation. Considering the evidence in the light most favorable to the prosecution, there was sufficient evidence for a rational fact-finder to find that Mulloy both caused and permitted her son to be placed in a situation where his life, body, or health might be injured or endangered.

2. *Polling the jury*

Mulloy asserts that the district court committed reversible error by failing to ask the jurors if the verdict read was in fact the jury's verdict, as required under K.S.A. 22-3421. In response, the State argues that Mulloy may not raise this issue on appeal because she failed to object below.

K.S.A. 22-3421 provides, in relevant part:  "The verdict shall be written, signed by the presiding juror and read by the clerk to the jury, and the inquiry made whether it is the jury's verdict." After the jury in this case informed the district court that it had reached a verdict, the following occurred:

12

"THE COURT: . . . [Y]ou are the presiding juror, is that correct?

"[PRESIDING JUROR]: Yes.

"THE COURT: Has the jury reached a verdict?

"[PRESIDING JUROR]: We have.

"THE COURT: And is it unanimous?

"[PRESIDING JUROR]: It is, your Honor.

"THE COURT: Would you please hand the verdict form to Brenda.

"All right. In Case No. 17CR500, the State of Kansas versus Kelly Mulloy. Count 1: We, the jury, find the Defendant guilty of aggravated endangering a child. Signed by the presiding juror.

"Count 2: We, the jury, find the Defendant not guilty of driving a vehicle while under the influence of alcohol.

"And the third part of the form, appropriately, was left blank as to the finding of Count 2.

"Counsel, please come up for just a moment.

"[DEFENSE COUNSEL]: Judge, my client too?

"THE COURT: No."

After an off-the-record discussion between the court and counsel, the court excused the jury from the courtroom. The court asked counsel and the parties if they had any objection to the form of the verdict; neither party objected. The court then advised that it had forgotten to see if counsel wanted to poll the jury and asked if they wished to do so before the jury was discharged. Neither the prosecutor nor defense counsel requested to have the jury polled.

There is no dispute that the district court did not inquire of the jury whether the verdict read was the jury's verdict, as required by K.S.A. 22-3421. But Mulloy readily acknowledges that she did not object to the court's initial failure to adhere to the statute and she affirmatively declined the court's invitation to have the jury brought back into the courtroom to be polled before being finally discharged from the case. Her failure to object and her affirmative decision to decline the court's offer to bring the jury back in to

13

be polled generally precludes her from raising this issue on appeal. See *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). But Mulloy urges us to consider the issue for the first time on appeal anyway because it involves a question of law based on undisputed facts and because it implicates her fundamental right to a unanimous jury verdict. See *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014) (setting forth three recognized exceptions to general rule that issues cannot be raised for first time on appeal).

But Mulloy's failure to raise this issue before the district court is fatal to her claim. See *State v. Cheffen*, 297 Kan. 689, 699, 303 P.3d 1261 (2013). In *Cheffen*, before the verdict was read the trial judge confirmed whether the jury had reached a verdict. The presiding juror stated, "'We have.'" 297 Kan. at 694. The trial judge then asked the remaining jurors, and the jurors collectively responded in the affirmative. The verdict was read, and the trial judge asked the attorneys if they had any motions to offer. The attorneys responded in the negative. The *Cheffen* court determined that consideration of court's compliance with K.S.A. 22-3421 necessarily involved a factual review, holding: "[T]he better rule is to require a party wishing to challenge the trial court's compliance with the procedures set out in K.S.A. 22-3421 for inquiring about a jury's verdict to have raised that issue first with the district court either in the form of a contemporaneous objection or posttrial motion." 297 Kan. at 698. Because Cheffen did not make a contemporaneous objection or file a posttrial motion, our Supreme Court held that he had failed to preserve this issue for appellate review. 297 Kan. at 699. Like Cheffen, Mulloy failed to object at trial or file a posttrial motion concerning the district court's failure to comply with K.S.A. 22-3421.

Mulloy argues that *Cheffen* was wrongly decided and contends that the procedures followed by the district court in this case effectively prevented the issue from being preserved in any meaningful way by a contemporaneous objection or posttrial motion. But the facts weighing against preservation are even stronger in this case given Mulloy not only failed to contemporaneously object when the court first failed to poll the jury,

14

but she later affirmatively declined the court's invitation to correct its error by having the jury brought back into the courtroom to be polled before being finally discharged from the case. And we are duty-bound to follow Kansas Supreme Court precedent, absent some indication the court is departing from its previous position. *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017). The Kansas Supreme Court has continued to reaffirm its holding in *Cheffen*. See *State v. Barber*, 302 Kan. 367, 385, 353 P.3d 1108 (2015) (challenge to district court's compliance with K.S.A. 22-3421 "must come in the form of a contemporaneous objection or in a posttrial motion"); *State v. Bolze-Sann*, 302 Kan. 198, 219-20, 352 P.3d 511 (2015) ("Our past cases have made clear that failing to raise a jury polling issue before the district court, either contemporaneously or in a posttrial motion, precludes appellate review."); *State v. Brown*, 298 Kan. 1040, 1055-56, 318 P.3d 1005 (2014) (asserted exceptions to preservation rule do not apply because right to unanimous jury verdict is not a fundamental right and any consideration of jury unanimity necessarily involves factual review). Because there is no indication that the Kansas Supreme Court is departing from its position in *Cheffen*, we find Mulloy has failed to preserve this issue for appellate review.

3. *Right to be present at all critical stages of trial*

Mulloy argues that the district court's procedure when answering a jury question violated her constitutional and statutory right to be present at a critical stage of the trial. Issues relating to a defendant's right to be present at a critical stage of the trial involve a question of law over which appellate courts exercise unlimited review. *State v. Herbel*, 296 Kan. 1101, 1106-07, 299 P.3d 292 (2013).

During deliberations, the jury provided two written questions to the district court. First, the jury asked: "'What is the definition of influence of alcohol?'" The district court, in Mulloy's presence, proposed the following answer: "'Please refer to jury instruction number nine,'" the instruction setting forth the elements of DUI. Neither party objected to

this answer. Second, the jury asked: "'The fact that she refused to take the line test, does that count as a failed test?'" The district court proposed the following answer: "'It is up to the jury to recall and interpret the evidence presented.'" Neither party objected to this answer. The record does not reflect whether Mulloy was present when the district court formulated the answers to the jury's questions or whether the district court provided the answers to the jury in Mulloy's presence.

In Kansas, a defendant has a statutory right to be present during discussion of any written jury question and during a response to a jury question given in open court unless the defendant waives these rights. K.S.A. 2019 Supp. 22-3420(d). Any act or omission violating K.S.A. 2019 Supp. 22-3420(d) also violates K.S.A. 2019 Supp. 22-3405(a), requiring a defendant in a felony case to be present at every stage of the trial, and the "'guarantee of the Sixth Amendment to the United States Constitution that a criminal defendant may be present at every critical stage of his or her trial.'" *State v. Verser*, 299 Kan. 776, 788, 326 P.3d 1046 (2014).

Given the record's silence, we must assume that the district court prepared the responses to the jury's questions and provided these responses to the jury without Mulloy or her attorney present. See *State v. Gonzalez*, 307 Kan. 575, 589, 412 P.3d 968 (2018) (where record does not affirmatively reflect presence of defendant, we will presume that defendant's constitutional right to be present was violated and that K.S.A. 22-3420[d] was not followed).

This error, however, does not require automatic reversal. When the same acts or omissions violated both the defendant's constitutional and statutory rights, an appellate court applies the more rigorous of the two harmless error standards—the federal constitutional harmless error standard. *Herbel*, 296 Kan. at 1110-11. Under the federal standard, error may be declared harmless only when the party benefitting from the error proves "beyond a reasonable doubt that the error complained of will not or did not affect

16

the outcome of the trial in light of the entire record, *i.e.*, proves there is no reasonable possibility that the error affected the verdict." *State v. Ward*, 292 Kan. 541, 569, 256 P.3d 801 (2011).

Four factors help determine whether a district court's communication with the jury outside the presence of a defendant is harmless under the constitutional standard:

> "(1) the overall strength of the case against the defendant; (2) whether either party objected to the manner in which the judge handled the communication; (3) whether the judge's communication with the jury 'concerned a critical aspect of the trial or rather involved an innocuous and insignificant matter,' and also how the communication was conveyed to the jury; and (4) the ability of any posttrial remedy to 'mitigate the constitutional error.' [Citation omitted.]" *Bolze-Sann*, 302 Kan. at 216-17.

Applying these factors here establishes that any error relating to the district court's communication with the jury outside of Mulloy's presence was harmless. First, the State's case against Mulloy was strong, and the evidence was sufficient to support the jury's finding of guilt of aggravated endangering a child. As detailed above, Mulloy drove through a construction zone in an unsafe manner by speeding and cutting across multiple lanes of traffic with her son in the car. As for the second factor, neither party objected to the district court's responses to the jury's questions, and the record is silent as to whether there was any objection made to how the court provided the responses to the jury. The third factor relates to whether the judge's communication involved a critical aspect of the trial. Both of the jury's questions concerned the DUI charge of which Mulloy was ultimately acquitted, not the aggravated child endangerment charge. Further, the district court's responses to the jury's questions provided no substantive information but merely directed the jury to the original instructions and to its recall of the evidence presented. Finally, Mulloy's posttrial motions did not seek to correct the district court's presumed procedural error.

There is no reasonable possibility that Mulloy's absence at a critical stage of the trial affected the outcome of the trial given the strength of the evidence supporting the jury's verdict, the fact that the jury's questions did not relate to her conviction for aggravated child endangerment, and Mulloy's failure to object at trial or in her posttrial motions. As a result, Mulloy's absence at a critical stage of the trial was harmless.

4. *Cumulative error*

Mulloy argues that the cumulative prejudice arising from the errors alleged above deprived her of her constitutional right to a fair trial. But we have found only one error in the claims presented—Mulloy's absence at a critical stage of the trial—and have concluded that the error was harmless. And a single error cannot support reversal under the cumulative error doctrine. *Gonzalez*, 307 Kan. at 598.

5. *Upward dispositional departure sentence*

Mulloy alleges that the district court erred by imposing a dispositional departure sentence from presumptive probation to prison. She contends that the court failed to provide substantial and compelling reasons to support this departure. Based on this failure, Mulloy asks us to vacate her sentence and remand her case to the district court for resentencing. In response, the State claims that this issue is moot because Mulloy has completed her sentence. Mulloy did not address the mootness issue in her brief nor did she file a reply brief to respond to the State's arguments.

Before reaching the merits of Mulloy's argument, we first must address the State's claim that the expiration of Mulloy's sentence renders this issue moot. As a general rule, Kansas appellate courts do not decide moot questions or render advisory opinions. *State v. Montgomery*, 295 Kan. 837, 840, 286 P.3d 866 (2012). Rather, the role of a court is to "'determine real controversies relative to the legal rights of the persons and properties

which are actually involved in the particular case properly brought before it and to adjudicate those rights in such a manner that the determination will be operative, final, and conclusive.'" *State v. Hilton*, 295 Kan. 845, 849, 286 P.3d 871 (2012). To be a real, justiciable controversy, a case must involve definite and concrete issues and "adverse legal interests that are immediate, real, and amenable to conclusive relief." *State ex rel. Morrison v. Sebelius*, 285 Kan. 875, 890-91, 179 P.3d 366 (2008). If it is clearly and convincingly shown that (1) the actual controversy has ended; (2) the entry of judgment would be ineffectual for any purpose; and (3) a judgment would have no impact on any of the rights of the parties, then the case must be dismissed as moot. *McAlister v. City of Fairway*, 289 Kan. 391, 400, 212 P.3d 184 (2009).

Mulloy asks this court to vacate her sentence and remand for the district court to resentence her. But we do not have the ability to grant this request. Mulloy already has served the 7-month prison term to which she was sentenced, as well as a 12-month term of postrelease supervision imposed by the court. According to the Kansas Adult Supervised Population Electronic Repository (KASPER), Mulloy was released from prison on February 1, 2019, and her postrelease supervision expired on August 3, 2019. Even if Mulloy is correct that the district court erred in imposing a departure sentence, the State of Kansas has no authority to punish or supervise Mulloy any further in this case. See *State v. Kinder*, 307 Kan. 237, 243-44, 408 P.3d 114 (2018) (probation operates as substitute for term of imprisonment and therefore cannot be imposed if underlying prison sentence has been completed); *Montgomery*, 295 Kan. at 844 ("We cannot change the sanction imposed for the probation violation because the prison term that Montgomery was ordered to serve has been completed."). And any answer that we might give on the appropriateness of the sanction imposed will not impact any criminal sanction Mulloy might receive in the future. Mulloy's conviction in this case, not the sentence imposed as a result, will be a fact that subsequent courts will use to calculate future sentences.

19

We do recognize an exception to the mootness doctrine when the question presented is capable of repetition and is of public interest even though the case has become moot for the present parties. *Hilton*, 295 Kan. at 850. In this context, public importance is defined as "something more than that the individual members of the public are interested in the decision of the appeal from motives or curiosity or because it may bear upon their individual rights or serve as a guide for their future conduct as individuals." 295 Kan. 845, Syl. ¶ 5. Nothing in the record suggests that this case is likely to interest the public for any reason beyond simple curiosity. It is similarly unlikely to guide the public's behavior in the future.

We cannot change the sanction imposed by the district court because the prison term that Mulloy was ordered to serve has been completed. Likewise, any answer that we might give on the appropriateness of the sanction imposed will not impact Mulloy's rights in the future. Because there is no longer a real, justiciable case or controversy for this court to resolve, this issue presents a request for an advisory opinion on a moot issue. As a result, we dismiss as moot Mulloy's claim that district court erred by imposing a dispositional departure sentence from presumptive probation to prison.

Affirmed in part and dismissed in part.