THE BOARD OF EDUCATION OF THE CITY OF LEAV-
ENWORTH v. SAMUEL PHILLIPS.

No. 13,478.   (73 Pac. 97.)

SYLLABUS BY THE COURT.

1. CONSTITUTIONAL LAW — *Impairment of Obligation of Con-tracts.* The inhibition of section 10 of article 1 of the consti-tution of the United States, that "no state shall pass any law impairing the obligation of contracts," does not apply to con-tracts made by parties dealing with a department of government concerning the future exercise of govermental power conferred by legislative acts, where the subject-matter of the contract is one which affects the safety and welfare of the public.

2. ———— *Power of Legislature.* One legislature has no power by the enactment of laws to prohibit a subsequent legislature from the full performance of its duties in the enactment of such laws as in its judgment are demanded for the public safety or gen-eral welfare of the public.

Error from Leavenworth district court; J. H. GILL-PATRICK, judge.   Opinion filed July 10, 1903.   Re-versed.

*C. F. W. Dassler, J. H. Atwood,* and *W. W. Hooper,* for plaintiff in error.

*Baker & Baker,* for defendant in error.

The opinion of the court was delivered by

GREENE, J.:   This is a proceeding in error to re-verse an order of the district court of Leavenworth county refusing to set aside a temporary injunction

theretofore granted,. restraining the board of education of the city of Leavenworth from issuing bonds to purchase a site and erect a high-school building thereon.

In 1879 the board of education of the city of Leavenworth refunded its then bonded indebtedness, under chapter 81, Laws of 1879. The plaintiff is the owner of one of such unmatured bonds. In 1903, the school board of said city, having complied with all the preliminary statutory requirements provided in chapter 196, Laws of 1891, for the issuance of bonds for the purpose, above stated, this proceeding was commenced challenging the power of the board to issue such bonds before payment of the refunding bonds issued under the act of 1879.

Plaintiff contends that under the provision of section 5, chapter 81, Laws of 1879, and especially the following sentence therein; "said board shall issue no bonds hereafter, except the refunding bonds provided for by this act," no other bonds can be issued by said board until such refunding bonds shall have been paid in full; that this provision is a part of the contract between the board and the purchasers of these bonds, and that the act of 1891 authorizing the board to issue additional bonds before the refunding bonds shall have been paid in full is an impairment of the plaintiff's contract, and within the inhibition of section 10 of article 1 of the constitution of the United States, which declares that "no state shall pass any law impairing the obligation of contracts." Chapter 196 of the Laws of 1891 fully authorizes the board to issue the bonds in question, and unless it falls within the inhibition of said section 10 of the federal constitution the injunction should not have been granted.

Admitting the contention of the plaintiff, however,

that the act of 1879, prohibiting the future issuance of bonds by the board of education until its refunding bonds shall have been paid, entered into and became a part of his contract, and that to permit the issuance of the present bonds would in some degree be an impairment of his contract, the question arises whether one legislature has the power to prohibit a subsequent legislature from changing, altering or annulling existing laws when, in the judgment of the latter, the public interests require it, although such change may impair the obligation of some contracts. The answer to this question depends, we think, entirely upon the subject of legislation and the subject-matter of the contract. In determining the application of this principle to the present case, it must be borne in mind that the maintenance of public schools is an exercise of governmental power in the interest of public morals and the general welfare of the people, and is as necessary for the self-preservation of a republican form of government as the maintenance of insane hospitals, reformatories, and penal institutions. In fact, one of the objects of the former is to decrease and eliminate as nearly as possible the necessity for the latter.

The duty of a state in respect to its public-school system is ever increasing and recurring. New or changed conditions arise which demand immediate relief; conflagrations and destruction by the elements must be met when they arise, if the system is to be maintained. These recognized emergencies demand not only that the state reserve the power to perpetuate itself in this respect, but also that the doors of expediency be left open. The fact that authority to carry on this department of government has been delegated to minor governmental functionaries, such as school districts, cities, and boards of education, make the ob-

ligation for their maintenance none the less the duty of the state. The power to carry on this department of government, or to perform any other strictly governmental duty, cannot be contracted or legislated away. All parties dealing with a sovereign power, or one of its functionaries in the exercise of governmental power, the subject of which pertains to government, do so knowing it cannot contract away the power conferred for self-protection or self-preservation.

The rule, therefore, that the legislature can pass no law impairing the obligation of contracts does not apply to parties dealing with a department of government concerning the future exercise of powers conferred for public purposes by legislative acts, where the subject-matter of the contract is one which affects the safety and welfare of the public. In such cases "the presumption is that when such contracts are entered into it is with the knowledge that parties cannot, by making agreements on subjects involving the rights of the public, withdraw such subjects from the police power of the legislature." (*Chicago &c. Railroad v. Nebraska*, 170 U. S. 57, 72, 18 Sup. Ct. 513, 42 L. Ed. 948.)

Controlled as we are by these fundamental principles of government, we are led to the conclusion expressed in *B. E. S. R. R. Co. v. B. S. R. R. Co.*, 111 N. Y. 132, 140, 19 N. E. 63, 2 L. R. A. 284:

"The same authority which confers upon one body the power of legislation authorizes its successors, in the exercise of their duty, to change, alter and annul existing laws when, in their judgment, the public interest requires it. In the performance of their duty of legislating for the public welfare, each successive body must, from necessity, be left untrammeled except by the restraints of the fundamental law."

The principle was stated in *Butchers' Union Co. v.*

*Crescent City Co.*, 111 U. S. 746, 753, 4 Sup. Ct. 652, 28 L. Ed. 585, in the following language :

"No legislature can bargain away the public health or the public morals.   The people themselves cannot do it, much less their servants.   The supervision of both these subjects of governmental power is continuing in its nature, and they are to be dealt with as the special exigencies of the moment may require. Government is organized with a view to their preservation, and cannot divest itself of the power to provide for them.   For this purpose the legislative discretion is allowed, and the discretion cannot be parted with any more than the power itself."

Notwithstanding the provisions in the refunding act of 1879, that "said board shall issue no bonds hereafter, except the refunding bonds provided for by this act," the plaintiff in purchasing the bonds did so knowing that the board could not contract away its power to exercise in the future the authority conferred upon it by the state for the administration of its public affairs.

It is urged by the defendant that this question was settled by this court in *Board of Education v. The State,* 26 Kan. 44.   An examination of that case will show that the question involved in the present one was not presented to the court in that case.   The only contention there made was that the title of the act contained two distinct subjects, and it was upon that ground that the case was determined.   Whatever else was said in that opinion was *dictum.*

The decisions in the case of *Smith v. The City of Appleton,* 19 Wis. 492, to which our attention has been called, is only the construction of the court of a special act passed authorizing the city of Appleton to refund its bonds, which seems to have contained many stringent provisions to secure their prompt payment.   The

construction of that special act can have no application to the question presented in this case.

The judgment of the court below is reversed, and it is ordered that the judgment awarding a temporary injunction be set aside and the injunction refused.

JOHNSTON, C. J., CUNNINGHAM, POLLOCK, BURCH, MASON, JJ., concurring.

SMITH, J., dissenting.