IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 118,035

JAYHAWK RACING PROPERTIES, LLC, and
HEARTLAND PARK RACEWAY, LLC,
*Appellants*,

v.

CITY OF TOPEKA, KANSAS,
*Appellee*.

SYLLABUS BY THE COURT

1.

City revenue projects may be divided into two categories: projects that serve a "governmental" or "legislative" function, and projects that serve a "proprietary" or "administrative" function.

2.

Whether an ordinance is administrative or legislative depends on the unique facts of each case.

3.

No single act of a governing body is likely to be solely legislative or solely administrative in nature.

4.

The development, introduction, or improvement of services are, by and large, considered governmental.

1

5.

The power to levee a tax generally belongs to the class of governmental power.

6.

One city council may not bind a subsequent one to its political decisions involving the exercise of government functions.

7.

Parties contracting with municipal corporations are bound at their peril to know the authority of the municipal body with which he or she deals.

8.

Parties contracting with municipal corporations are deemed to understand the law of this State, and they knowingly assume the risk associated with such contracts.

Review of the judgment of the Court of Appeals in 56 Kan. App. 2d 479, 432 P.3d 678 (2018). Appeal from Shawnee District Court; TERESA L. WATSON, judge. Opinion filed April 9, 2021. Judgment of the Court of Appeals reversing the district court is reversed. Judgment of the district court is affirmed.

*Cynthia J. Sheppeard,* of Goodell, Stratton, Edmonds & Palmer, LLP, of Topeka, argued the cause, and *Wesley A. Weathers* and *Patricia E. Riley*, of the same firm, were with her on the briefs for appellants.

*Catherine P. Logan,* of Lathrop Gage LLP, of Overland Park, argued the cause, and *Thomas V. Murray* and *Mark A. Samsel,* of the same firm, were on the briefs for appellee.

*Amanda L. Stanley*, general counsel, of League of Kansas Municipalities, amicus curiae.

The opinion of the court was delivered by

ROSEN, J.:  The City of Topeka entered into an agreement with private owners to assume full ownership of a motor speedway, the rights to which would be paid through Sales Tax and Revenue (STAR) bonds. The City subsequently decided not to fulfill the terms of the agreement. The private owners filed suit seeking damages for breach of contract. Holding that the agreement was an exercise of a governmental function and not binding on successive City Councils, the district court granted the City's motion to dismiss. The Court of Appeals reversed, holding that the agreement was an exercise of an administrative function, and remanded for proceedings on the breach of contract action. This court granted the City's petition for review.

We disagree with the analysis by the Court of Appeals for the reasons set out below.

*The History and the Litigation of the Topeka Raceway Development Projects*

Jayhawk Racing Properties, LLC (Jayhawk) and Heartland Park Raceway, LLC (Heartland) are Kansas limited liability companies. Heartland is a multipurpose motorsports facility located in Topeka, Kansas (the City). Heartland Park Raceway was constructed in 1988, with the expectation that the park would become a major race and entertainment facility generating revenue for the City. Use of Heartland did not develop as hoped, and it went into bankruptcy and was closed in the fall of 2002. The assets and management agreement were purchased in the spring of 2003 by Raymond Irwin. Disrepair had taken its toll, however, necessitating public funding for capital improvements.

3

In 2005, the raceway was designated a "major motorsports complex," and the City established the Heartland Park Redevelopment District. The following year, it issued more than $10 million in STAR bonds. The City took ownership of the raceway real property for a term of years, while Jayhawk retained a reversionary interest.

Because of insufficient sales tax revenues, the City began to contribute to the debt service on the bonds from general revenue. In response to this shortfall, the City developed a plan to expand the STAR bond district. In 2014, the City Council approved a Memorandum of Understanding (MOU) and a Workout Agreement with Jayhawk. Under the MOU and agreement, the City agreed to purchase Jayhawk's reversionary interest for about $2.4 million. The City also agreed to make commercially good-faith reasonable efforts to carry out the objectives of the MOU. On August 12, 2014, the City Council adopted Ordinance No. 19915, which provided for the expansion of the existing STAR bond district, subject to approval by Shawnee County and approval of the STAR bond plan. The Ordinance authorized issuing $5 million in additional STAR bonds.

In October 2014, a taxpayer, Christopher Imming, filed a petition seeking repeal of or a voter referendum on the Ordinance. The City, later joined by Jayhawk, sought declaratory judgment that Imming's petition was not a legitimate means of attacking the Ordinance because, among other reasons, the Ordinance was an exercise of proprietary authority, not governmental authority. The district court agreed, and Imming appealed. The Court of Appeals held that the Ordinance was governmental in nature but that the STAR bonds statute had a separate and specific protest petition process that exempted the Ordinance from the voter referendum process that Imming utilized. *City of Topeka v. Imming,* 51 Kan. App. 2d 247, 261-69, 344 P.3d 957, *rev. denied* 302 Kan. 1008 (2015).

4

In April 2015, four new members were elected to the City Council for four-year terms. The City then underwent a change of its municipal heart and decided not to pursue the sale of bonds as envisioned by the MOU and the Ordinance. Following demand letters and e-mail messages with the City, Jayhawk and Heartland filed suit in Shawnee District Court seeking damages for breach of contract. The City responded with a motion to dismiss, alleging a failure to state a claim on which damages could be awarded. The plaintiffs then amended their petition to add a third count involving stormwater utility charges, a count essentially independent from their breach of contract claim.

The district court granted the City's motion to dismiss the breach of contract claims. In a thorough and well-reasoned decision, the district court found that the City's actions in negotiating and agreeing to buy the reserve interests and issue bonds was an exercise of its governmental or legislative function, and one city council therefore could not bind a subsequent city council to carry out its policies.

The plaintiffs then moved for certification for appeal under K.S.A. 2016 Supp. 60-254(b) (court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties if court expressly determines there is no just reason for delay). The district court denied the plaintiffs' motion on the grounds that the gain in judicial economy would not outweigh the disadvantages of piecemeal appeals. The parties thereupon agreed to stipulate to the dismissal of the third count with prejudice. All claims having then been disposed of, the plaintiffs filed a timely notice of appeal on July 12, 2017.

In a published opinion, the Court of Appeals disagreed with the district court, held the government action was proprietary, and reversed and remanded the case for further proceedings. *Jayhawk Racing Properties v. City of Topeka*, 56 Kan. App. 2d 479, 493,

5

502, 432 P.3d 678 (2018). The City filed a petition for review. This court granted review with respect to all issues presented.

*Governmental or Proprietary Function*

City revenue projects may be divided into those that serve a "governmental" or "legislative" function on the one hand, and those that serve a "proprietary" or "administrative" function on the other hand. Courts tend to use these alternative nomenclatures freely without a distinction in meaning. See *KPERS v. Reimer & Koger Assocs., Inc.*, 262 Kan. 635, 658, 941 P.2d 1321 (1997); 2A McQuillin Mun. Corp. § 10:5 (3d ed.). While it is possible that a subtle distinction exists among the terms, under the facts and issues of this appeal, "governmental" and "legislative" functions are treated as equivalent concepts, as are "proprietary" and "administrative" functions. In a general sense, governmental or legislative powers are exercised for administering the affairs of the political jurisdiction and to promote the public welfare at large, whereas proprietary or administrative powers are exercised to carry out private corporate purposes in which the public is only indirectly concerned and where the municipality may be considered a legal individual. See *KPERS*, 262 Kan. at 658 (quoting *International Ass'n of Firefighters v. City of Lawrence*, 14 Kan. App. 2d 788, Syl. ¶ 3, 798 P.2d 960 [1991]); 2A McQuillin Mun. Corp. § 10:5 (3d ed.).

The district court ruled that issuing STAR bonds is a governmental function that the City could not assume an obligation to perform. The Court of Appeals reached a different conclusion:  that the City had entered into an agreement to perform a proprietary undertaking, and such an agreement is enforceable at law. The question before this court, then, is whether the MOU described a governmental or a proprietary function. The answer to that question bears strongly on the enforceability of the MOU.

6

After defining and distinguishing between governmental and proprietary functions, we conclude that the present case involves the exercise of governmental policy-making powers, including the policies of whether to promote economic growth through the mechanism of a revitalized speedway and whether to fund such revitalization through particular revenue-raising mechanisms. We further conclude that such government functions cannot be contracted away and that one legislative body cannot bind a successor legislative body to its policy commitments.

*Standard of Review*

The enforceability of a bond contract may be construed and its legal effect determined de novo by the appellate courts regardless of the construction by the trial court. See *In re Cherokee County Revenue Bonds*, 262 Kan. 941, 950, 946 P.2d 83 (1997). The interpretation and legal effect of written instruments are matters of law, and an appellate court exercises unlimited review. *Born v. Born*, 304 Kan. 542, 554, 374 P.3d 624 (2016).

Whether a district court erred by granting a motion to dismiss for failure to state a claim is a question of law subject to unlimited review. The appellate court views the facts derived from the pleadings in a light most favorable to the plaintiff and assumes as true those facts and any inferences reasonably drawn from them. If those facts and inferences state any claim upon which relief can be granted, then dismissal is improper. *Cohen v. Battaglia*, 296 Kan. 542, 545-46, 293 P.3d 752 (2013).

*Discussion*

K.S.A. 2020 Supp. 12-17,169 provides for special obligation bonds and full faith and credit tax increment bonds. K.S.A. 2020 Supp. 12-17,169(b)(1) empowers cities to issue full faith and credit tax increment bonds to finance the undertaking, establishment, or redevelopment of any major motorsports complex. The statute sets out general conditions for issuing such bonds, which include preliminary studies and approval by the Secretary of the Department of Commerce. See K.S.A. 2020 Supp. 12-17,179(b) and (c).

K.S.A. 2020 Supp. 12-17,169(b)(1) explains that full faith and credit tax increment bonds are made payable "from a pledge of the city's full faith and credit to use its ad valorem taxing authority for repayment thereof in the event all other authorized sources of revenue are not sufficient."

In the present case, the City agreed to use special bonds to finance purchase of and improvements to Heartland Park Raceway. An initial task in deciding whether the agreement is enforceable at law is to determine whether the City's agreement was governmental or proprietary in nature. Deciding whether an ordinance is governmental or proprietary depends on the unique facts of each case. See *McAlister v. City of Fairway*, 289 Kan. 391, 399, 212 P.3d 184 (2009). No single act of a governing body is likely to be solely governmental or solely proprietary in nature. 289 Kan. at 402.

The *McAlister* court provided four guidelines for determining whether an ordinance is governmental or proprietary:

8

1. An ordinance that makes new law is governmental; an ordinance that executes an existing law is proprietary. Permanency and generality are key features of a governmental ordinance.

2. Acts that declare a public purpose and provide ways and means to accomplish that purpose generally may be classified as governmental. Acts that deal with a small segment of an overall policy question generally are proprietary.

3. Decisions that require specialized training and experience in municipal government and intimate knowledge of the fiscal and other affairs of a city in order to make a rational choice may properly be characterized as proprietary, even though they may also be said to involve the establishment of policy.

4. If the subject is one of statewide concern in which the Legislature has delegated decision-making power, not to the local electors, but to the local council or board as the State's designated agent for local implementation of State policy, the action receives a "governmental" characterization. 289 Kan. at 403-04.

In *Imming*, 51 Kan. App. 2d 247, the Court of Appeals was presented with some of the same questions that we face here—whether the Ordinance at issue in the present case was a governmental or a proprietary matter—but in a different posture. In that case, a citizen sought to repeal the Ordinance through a voter referendum. The City was joined by Jayhawk in defending the Ordinance.

The *Imming* court held that the Ordinance was legislative, that is to say, governmental. 51 Kan. App. 2d at 261. The court analyzed the question in detail, comparing the instant situation with the outcome in six other cases. The court looked at

*State ex rel. Malone v. Jacobs*, 135 Kan. 513, 517, 11 P.2d 739 (1932) (ordinance declared city's intent of widening street was legislative; included condemnation and appropriation of private property); *State ex rel. Wunsch v. City of Kingman*, 123 Kan. 207, 254 P. 397 (1927) (resolution declaring improvement of street necessary was legislative; later ordinance providing details of painting street was administrative); *State ex rel. Boynton v. Charles*, 136 Kan. 875, 878, 18 P.2d 149 (1933) (ordinance for building and equipping municipal gas plant was legislative); *State ex rel. Dawson v. City of Pratt*, 92 Kan. 247, 252, 139 P. 1191 (1914) (creation of electric plant was legislative); *City of Wichita v. Kansas Taxpayers Network, Inc*., 255 Kan. 534, 540, 874 P.2d 667 (1994) (operation, management, and financing of citywide storm water management system fits in context of decisions requiring specialized knowledge and experience relating to city management, especially because the city already owned the system; city's exercise of powers was administrative); *City of Lawrence v. McArdle*, 214 Kan. 862, Syl. ¶ 5, 522 P.2d 420 (1974) (ordinance seeking to equalize firefighters' salaries with law enforcement officers' salaries dealt with pay issues and could not be permanent; issue was administrative).

The reasoning of *Imming* is persuasive. The Court of Appeals applied the general principles of the governmental/proprietary dichotomy as articulated in *McAlister* and compared the policies in question in the present case with those in other cases considered by this court to reach the sound conclusion that this is a matter of governmental policy.

Because the plaintiff in *Imming* is not a party to the present case, and the defendant, City of Topeka, advocated for a different outcome than it does here, preclusionary doctrines such as claim preclusion and issue preclusion do not necessarily mandate a particular resolution in the present case. We, nevertheless, conclude that the

10

Court of Appeals panel in *Imming* reached the correct conclusion, whereas the panel in the present case did not.

Governmental functions are those that are performed for the general public with respect to the common welfare for which no compensation or particular benefit is received, while proprietary functions are exercised when an enterprise is commercial in character, is usually carried on by private individuals, or is for the profit, benefit, or advantage of the governmental unit conducting an activity. *KPERS*, 262 Kan. 635, Syl. ¶ 6.

One difference between the two functions has been enunciated in a treatise on municipal government:  A contract to pay a specified sum over a specified period of time is binding on the successors of the municipal officials who made the contract. But the power to levee a tax belongs to the class of legislative and governmental power. In the first instance, the successors may be bound; in the other case they cannot be. 10A McQuillin, Mun. Corp. § 29:103 (3d ed.). In the present case, Jayhawk specifically seeks to enforce an agreement to levee a particular kind of tax, which is power that falls squarely within the governmental function of city authority.

This court addressed a closely related question in *Blevins v. Board of Douglas County Comm'rs*, 251 Kan. 374, 834 P.2d 1344 (1992), where the plaintiffs sought injunctive relief to prevent a county from spending the proceeds of certain bonds on a trafficway project. The court considered whether the county was required to conduct a binding election regarding the spending or retirement of the bonds. The plaintiffs asserted that the county breached an implied contract to hold a binding election relating to the bonds. The court rejected the argument and affirmed the trial court's dismissal of the

11

case, holding that, because the county "could not contract to hold a binding election, any promises regarding the election were political and not contractual." 251 Kan. at 385.

The *Blevins* court cited to *Marco Dev. Corp. v. City of Cedar Falls*, 473 N.W.2d 41 (Iowa 1991), in which the city signed an agreement which, according to the plaintiff, obligated the city to widen a street adjacent to a shopping mall Marco proposed to build. Following the election of a new mayor, the city decided not to follow through on widening the street. Marco sued the city for breach of contract, but the district court ruled the contract was ultra vires on the part of the city and granted the city's summary judgment motion. On appeal, the Iowa Supreme Court noted that a city may not contract for the performance of its governmental functions, explaining: "'One who contracts with a city is bound at his peril to know the authority of the officers with whom he deals, and a contract unlawful for lack of authority, although entered [into] in good faith, creates no liability on the part of the city to pay for it, even in quantum meruit.' 473 N.W.2d at 43." 251 Kan. at 385.

As we ascertain from *Blevins*, *Marco Dev. Corp.*, *KPERS*, and other cases to which the *Imming* court cited, the development, introduction, or improvement of services are, by and large, considered governmental. The routine maintenance of the resulting services is deemed proprietary. Although the MOU in the present case calls for some routine maintenance, it emphasizes major reconstruction and new development, typical of a governmental function. We conclude that the Ordinance in the present case served a governmental or legislative function, meaning that parties contracting with the City could not sue for breach of contract when the new City Council decided not to proceed with the agreed courses of action.

12

The Court of Appeals looked to *Brown-Crummer Investment Co. v. Arkansas City*, 125 Kan. 768, 773-74, 266 P. 60 (1928), where this court held that the agreement between a contractor and a city to deliver the bonds issued in payment for the construction of a sewer was an enforceable contract and subjected the City to damages for default. In that case, the court upheld the transferability from the contractor to an investment company of the obligations and benefits and required the City to pay to the plaintiff investment company the compensation in the form of bonds. In a general sense, this case suggests that a city works project funded through either cash or bonds may become binding on a city, from which our Court of Appeals concluded that public works projects are proprietary in nature.

This conclusion is incorrect. The bonds in *Brown-Crummer* were revenue bonds, which is to say, they were funded solely by the income from the project to which they were dedicated. The court held that the decision to pay for the finished project through these bonds and to deliver the bonds to the transferee of interests was proprietary, whether the project itself was governmental or proprietary:  "The matter of delivery and disposition of the bonds lies outside of the public and governmental function and has been said to be an executive and administrative act." 125 Kan. at 773. A comparable situation might be if the City in the present case had followed through with its commitment to have the speedway expanded and improved but had, at the completion of the project, announced that it would pay only half the promised money. Developing the project and procuring the STAR bonds would be a governmental function from which a later City Council might back away; paying the specified amount in a contractually agreed-upon manner would be an administrative act, from which the City could not unilaterally withdraw without potentially adverse consequences.

13

The Court of Appeals contended that it could "see no real distinction between these facts [of the present case] from those in *Brown-Crummer Investment Co*." *Jayhawk Racing Properties*, 56 Kan. App. 2d at 494. There is, however, a quite significant distinction—the present case deals with the decision whether to initiate and proceed with a public works project, while *Brown-Crummer* dealt with the mechanism for making payment on the nearly completed project. This distinction is consistent with what the Court of Appeals noted in *Imming*: "Acts that declare public purpose and provide ways and means to accomplish that purpose generally may be classified as legislative. Acts that deal with a small segment of an overall policy question generally are administrative." 51 Kan. App. 2d at 257 (citing *McAlister*, 289 Kan. at 403).

The Court of Appeals panel in the present case erred in a fundamental aspect of its analysis. The Court of Appeals wrote:

> "Following the guidance of the cases [cited earlier], we look at the subject matter of the contract and not just how the contract might be financed. The City wanted to buy all remaining interests in Heartland Park and contracted with Jayhawk Racing to do so. Therefore, we conclude this contract deals with property, not policy." *Jayhawk Racing Properties*, 56 Kan. App. 2d at 501.

Whether a contract deals with property is, in itself, irrelevant to whether purchasing and developing property is a matter of policy. The decision to invest in a race track, expand the area around the track, encourage commercial development in the proximity of the track, and improve the facilities, all with a purpose of making the City more attractive to visitors and increasing both tax revenues and the economic viability of businesses in the City, represents the epitome of governmental policy making.

14

The agreement into which the City entered was to take on a responsibility outside the general administrative functions of a municipality. It opted, for policy reasons, to create a commercial development zone and expand its interest in a speedway. In its agreement to do so, it acknowledged additional steps that lay outside its immediate control, including gaining the support of the Kansas Department of Commerce. These additional steps further tend to show that these were not simple proprietary agreements, but that they hinged on policy considerations that rippled through various governmental and private institutions.

The City's execution of the major terms of the MOU was clearly conditional on several events coming together. These included approval of the STAR Bond Project Plan by the City Council and the Kansas Secretary of Commerce, notice of the 60-day protest period as required by Kansas statutes, as well as the City's issuance of full faith and credit STAR bonds. Before the City could legally fulfill its monetary obligation under the contract, the City Council would have had to approve official statements describing the STAR bonds; it would have had to accept bids; and it would have had to vote in an open meeting to authorize and direct the issuance of STAR bonds. Furthermore, the Secretary of the Kansas Department of Commerce would have had to approve the final version of the bonds project, and the Attorney General would have had to approve the bonds. See K.S.A. 2020 Supp. 10-106; K.S.A. 2020 Supp. 12-17,169. While all of those steps might well have been successfully completed if the City had pursued the matter, they demonstrate that policy matters, such as the desirability and viability of the bond venture, were critical to fulfilling the terms of the MOU.

Here, the MOU did not authorize the issuance of bonds, which is tightly governed by statute. This court would not require that, as a matter of law, the City must accept whatever bids would make it possible to sell bonds. Enforcing the MOU as a contract to

15

issue bonds would in this case require holding that one elected municipal body can bind a successor municipal body to accept bids, even if those bids are outrageously high.

In *Charles*, this court stated:

"Here the question involved is plainly a matter of public policy. It is, 'Shall the city build and equip a municipal gas plant to be paid for by the issue of bonds by the city or obtain gas under a contract from a private party?' The project is one in which the public is vitally interested, and the proposal involves a matter of public policy or the method of financing the securing of gas for the people. The general rule has been stated as follows: 'Acts constituting a declaration of public purposes and making provisions of ways and means of accomplishment may be generally classified as calling for the exercise of legislative power.' 43 C. J. 585." 136 Kan. at 877.

This holding is closely on point with the present case, where the question might be framed: Shall the City expand and improve a speedway and the surrounding commercial zone to be paid for by the issue of bonds by the City or abstain from further investment in the matter? It is a project in which the public is vitally interested, in that private land will be converted into commercial development and a large public debt will be incurred, and it involves a matter of public policy, in that urban growth and finance will experience a direct impact from the decision.

Having determined that the MOU was an exercise of a governmental power, we next conclude that the MOU does not subject the City to a legally enforceable obligation. This is because one city council may not bind a subsequent one to its political decisions.

Such was the holding of *State ex rel. Hawks v. City of Topeka*, 176 Kan. 240, 270 P.2d 270 (1954). There, the court discussed the enforceability of a contract between the

16

City and a private enterprise for managing public parking. The contract provided that, if any of the parking facilities were damaged beyond use, the City would restore the facilities within a reasonable time within its financial ability. This court held:

> "This provision is unreasonable in that should the property be destroyed at some future date it would require the City to rebuild or repair, even though subsequent governing bodies might determine that it could no longer serve a public use and that it would not be advantageous to the general public to rebuild or repair. Under the authority delegated to a city by the statute, the matter of rebuilding or repairing would be a question to be determined by the then governing body of the city. The present governing body may not bind future bodies with the advisability of rebuilding or repairing such structures." 176 Kan. at 252-53.

See also *Gilleland v. Schuyler*, 9 Kan. 569, 580 (1872); *Red Dog Saloon v. Board of Sedgwick County Comm'rs*, 29 Kan. App. 928, 931, 33 P.3d 869 (2001) ("It is clear that a legislative body cannot bind its successor to the amendment or repeal of its laws.").

We note that the prohibition on binding subsequent elected bodies to the governmental decisions of previous elected bodies applies not only to the decision to issue bonds but also to the promise of good faith in pursuing the procurement of those bonds.

In *Board of Education v. Phillips*, 67 Kan. 549, Syl. ¶2, 73 P. 97 (1903), this court held, consistent with other cases cited to above, that "[o]ne legislature has no power by the enactment of laws to prohibit a subsequent legislature from the full performance of its duties in the enactment of such laws as in its judgment are demanded for the public safety or general welfare of the public." The court held that, when public interests require subsequent rejection of contract terms, the prohibition against the impairment of public

17

contracts does not apply. 67 Kan. at 551-52. A duty to pay for a reversionary interest is no more subject to that rule than is a duty to make good-faith efforts to pay for that interest.

If this rule appears unfair to parties that dive into the murky waters of municipal contracts, not knowing whether bonds will be approved, it must be remembered that the plaintiff entered into the contract under the laws of the State of Kansas, and the law in this State—as well as in most other states—is that legislative bodies may not bind future legislative bodies to their governmental decisions. "One contracting with a municipal corporation is bound at his or her peril to know the authority of the municipal body with which he or she deals." *Genesis Health Club, Inc. v. City of Wichita*, 285 Kan. 1021, Syl. ¶ 8, 181 P.3d 549 (2008). Parties contracting with municipal corporations are deemed to understand the law of this State, and they knowingly assume the risk.

Because the decision of the City Council to enter into the MOU and move forward on issuing STAR bonds was a governmental decision, the newly elected City Council had no obligation to carry out the policies of its predecessor. It was not bound to act in conformity with the MOU, and the plaintiff may not collect damages—either in contract or tort—because the City no longer considered the MOU to be in the best interests of the citizens of Topeka.

Having reached this conclusion, we decline to decide other issues presented by the City, including whether the MOU created an obligation that is contrary to Kansas statutory limits on municipal indebtedness.

The decision of the Court of Appeals reversing the district court is reversed. The decision of the district court is affirmed.

BEIER and WILSON, JJ., not participating.

MICHAEL E. WARD, Senior Judge, assigned.[1]

ERIC A. COMMER, District Judge, assigned.[2]

* * *

STEGALL, J., concurring:  I join today's decision but write separately to question the ongoing validity and viability of the legal distinction between "governmental" and "proprietary" municipal functions. Though the issue was not presented to us in this case, there is a strong argument that the governmental-proprietary distinction is "practically unworkable and conceptually incoherent" and "is notorious for its inconsistent and unprincipled applicability." Feldman, *Strict Tort Liability for Police Misconduct*, 53 Colum. J.L. & Soc. Probs. 89, 124-26 (2019).

While courts may be able to articulate a differentiating factor on paper (as we have here), repeated attempts to classify municipal actions "that are not obviously

_____

[1]**REPORTER'S NOTE**:  Senior Judge Ward, was appointed to hear case No. 118,035 vice Justice Beier under the authority vested in the Supreme Court by K.S.A. 20-2616.

[2]**REPORTER'S NOTE:**  District Judge Commer was appointed to hear case No. 118,035 vice Justice Wilson under the authority vested in the Supreme Court by art. 3, § 6(f) of the Kansas Constitution.

19

governmental or obviously proprietary" creates a "'twilight zone'" of inconsistent application across and within jurisdictions. 53 Colum. J.L. & Soc. Probs. at 126-27. Another scholar has explained the danger of arbitrary decision making in this arena well:

"What frustrates people the most about the governmental/proprietary distinction is the tendency of courts to borrow the 'governmental' or 'proprietary' label from a case generated in a different field of law or from a different jurisdiction without thinking about (or explaining) whether the application of the label makes sense in the case at hand. This willy-nilly labeling of municipal activities is why Felix Frankfurter called the governmental/proprietary distinction the 'quagmire that has long plagued the law of municipal corporations.' This practice is what leads to the operation of a public park being dubbed 'proprietary' so the heirs of a drowned man could maintain a tort action against a city, while another case treats parks and parkways as 'governmental' so that a city cannot enter into contracts limiting its future legislative choices regarding their operation. The same practice leads to a solid waste facility being labeled 'proprietary' so that property owners could maintain a tort action against a city for careless operation of machinery that caused a fire, while another solid waste facility was treated as 'governmental' and therefore immune from taxation by a city burdened with the costs of garbage trucks rumbling over its streets on their way to a transfer station." Spitzer, *Realigning the Governmental/Proprietary Distinction in Municipal Law*, 40 Seattle U. L. Rev. 173, 202-03 (2016).

Professor Spitzer's sentiment is echoed in both caselaw and scholarly commentary. See, e.g., *City of Wenatchee v. Chelan Cty. Pub. Util. Dist. No. 1*, 181 Wash. App. 326, 351, 325 P.3d 419 (2014) (Fearing, J., concurring) ("I write separately because I consider current distinctions between a proprietary function and a governmental function . . . to be outdated."); Bersani, *The Governmental Function Immunity Defense in Personal Injury*

20

*Cases, An Analytical Template*, 87 N.Y. St. B.J. 42, 43 (2015) ("[I]t is not always clear which hat [proprietary or governmental] the government is wearing. The fuzzy area between governmental and proprietary functions is particularly troubling for our courts."); Traska & Knouff, *Discretion to Follow the Law: The Collision of Ohio's Nursing Home Bill of Rights with Ohio's Political Subdivision Tort Liability Act*, 22 J.L. & Health 241, 248 (2009) ("[T]he Ohio courts' attempts to place the functions of municipalities into these two categories caused 'confusion and unpredictability in the law.' '[T]he classification of the specific functions of municipalities has been difficult and frequently lead to absurd and unjust consequences.' Furthermore, 'it is impossible to reconcile all the decisions of this court dealing with the subject of governmental and proprietary functions in relation to a municipality.'"); Stephens & Harnetiaux, *The Value of Government Tort Liability: Washington State's Journey from Immunity to Accountability*, 30 Seattle U. L. Rev. 35, 39 (2006) ("While this criteria appears to be simple and straightforward, it proved to be difficult to apply. As in other jurisdictions, Washington's early case law revealed inconsistencies in the application of the governmental-proprietary dichotomy."); Maloney & O'Laughlin, *The People Can Do No Wrong: An Examination of State and Eleventh Amendment Sovereign Immunity for Missouri's Public School Districts*, 74 UMKC L. Rev. 883, 888-89 (2006) ("[O]pposition has [risen against] the proprietary-governmental dichotomy, which generally holds that sovereign immunity is enjoyed only by governmental bodies in the performance of governmental functions. . . . But the differences between proprietary and governmental are far from obvious. In fact, the *Jones* court relied partly on the confusion between the two functions[,] . . . reasoning the 'governmental-proprietary dichotomy' had produced a 'maze of inconsistency,' resulting in 'uneven and unequal results which defy understanding.'"); Sapp, *Murky Waters: Barriers to Recovery for Flood Damage from Municipal Waterworks*, 70 Mo. L. Rev. 931, 943 (2005) ("The governmental versus proprietary function differentiation applied to municipalities is an unclear distinction that

can have a significant impact on the outcome of a dispute. . . . [E]ven in situations where both parties agree that a municipal activity is a proprietary function, issues of differentiation between governmental and proprietary functions that impact the analysis of liability may still arise.").

Under existing precedent not challenged by the parties here, I join our decision. Whether the legal distinction between governmental and proprietary functions will have a future in Kansas is not before us. I note, simply, that I would welcome the opportunity to examine that question more thoroughly some other day.

ERIC A. COMMER, District Judge, joins the foregoing concurrence.